A. P. KITCHEN, *Plaintiff in Error*, v. J. H. LONG, *Defendant in Error*.

Opinion Filed February 3, 1914.

Where the seller of a fine looking mule refused to guarantee the soundness of the latter, but was well aware that it was afflicted with a hidden defect, not discoverable by ordinary observation, and where he untruthfully stated to the buyer that he did not know anything about the mule, and intentionally concealed the defect in the animal, the buyer when he discovered he had been imposed upon had a right to rescind the trade and recover his own property, traded for the diseased mule.

Writ of Error to Circuit Court for Jackson County; D. J. Jones, Judge.

Judgment affirmed.

*Paul Carter,* for Plaintiff in Error;

*Amos E. Lewis,* for Defendant in Error.

HOCKER, J.—J. H. Long, the defendant in error, brought an action of replevin against A. P. Kitchen, the plaintiff in error, in the Circuit Court of Jackson County to recover possession of one black horse mule about 14 years old, named "Dock," and one blue mare mule, about fourteen years old, named "Della," alleged to be unlawfully detained by the defendant, and in the possession of defendant, of the value of $200.00.

The affidavit and other proceedings are the usual ones in such a case. The defendant Kitchen pleaded not guilty; on the trial the jury found a verdict for the plaintiff, and the statutory judgment entered for the plaintiff for the mules for $200.00, the value of the mules and costs. This judgment is here for review on writ of error.

Mr. Long testified that Mr. Kitchen came to him at the oyster cart in front of the City Drug Store in Marianna and told him that he, Kitchen, had two mules he wanted to trade with him (Long). Long had a pair of mules. He, Long, went with Kitchen to Mr. Dillon's barn, and Kitchen showed him the two mules. Long noticed a big mare mule, and Kitchen said it was his mule. Long looked at the big bay mare mule, and Kitchen told Long he did not know anything about her, he had just traded for her with a man from Calhoun County. Long told Kitchen if he would guarantee this mule, he, Long, would swap him his two mules and give him $50.00 to boot. Kitchen refused to guarantee the mule, and said he did not know anything about her. They finally traded, Long giving his two mules and $25.00 to boot for Kitchen's mule. Long testified his mules were worth $100.00 each.

In driving her home, Long found there was something the matter with the mule he got from Kitchen. She was a big, black, fat, slick mule. Long, it seems, found out the day he swapped that the mule was what the witness called a "choker." She would "choke" down if she was plowed. She was worthless. Long carried her back the next day and offered her to Kitchen, with the $25.00 he had received as boot, and demanded the mules he had traded to Kitchen, which the latter refused to return. There is no denial that the mule Kitchen traded Long was worthless, and that she died in a few days. Kitchen says he told Long he would not trade the mule except at the end of the halter; that he would not guarantee the mule to him; that he would not guarantee he could get her out of the stable, or put a bridle on her, or get her across the street, and that he and Long traded on these terms. Kitchen testified he told Long he had just traded for the mule with Charley Henderson from Calhoun county; that he did not know the mule was a choker, but thought there was something the matter with her; that was the reason he refused to guarantee. He had since learned Henderson had put up a job on him. Mr. Eubanks testified that Long came out of the stable leading the big black mule and remarked that Kitchen had refused to uarantee the mule, and that it was his mule if he couldn't get it across the street; that Oliver and Dillon heard the same things. Mr. Long testified that Kitchen had made the statements as to not guaranteeing the mule, and that he, Long, had also said he made the trade and that he would stick by it, but that he did not know at the time that the mule he traded for was a choker. Mr. Atkins testified he was in Marianna when Long tendered Kitchen the $25.00 and demanded the return of his mules. The mule Long got from Mr. Kihchen was a choker and

worthless. He says he heard Mr. Kitchen tell Mr. Long at the time they traded that he didn't know anything about the big bay mare mule; that he traded for her with a man from Calhoun county. Mr. D. P. Daniels testified that he was with Mr. Long and Mr. Kitchen; that he was Manager of the Mizell Live Stock business at Marianna; that he knew the mule Mr. Kitchen swapped to Mr. Long; that Mr. Kitchen knew she was a choker; that two or three weeks before Long traded for this mule Mr. Kitchen was down at his (Daniels') barn and Mr. Clemmons and himself were joking Kitchen about letting Charlie put a *choker* off on him; "he told us at that time he knew she was a counterfeit and *choker*, but that he would get even by putting her on somebody else." Mr. J. E. Clemmons corroborated Mr. Daniels. Mr. Kitchen does not deny the conversation which was detailed by Mr. Daniels and Mr. Clemmons. This is substantially the material part of the evidence.

The assignments of error raise the material question whether Mr. Kitchen should have informed Mr. Long of the latent defect of the mule, when they were trading, in spite of the fact that he refused to guarantee the animal generally. Upon this question the courts are divided. See 35 Cyc. 69, notes 40 and 41. It is there said: "Some cases carry the doctrine of *caveat emptor* so far as to hold that the seller is under no obligation to communicate the existence of defects in the thing sold not discoverable by examination, such as a hidden disease in an animal (citing an Illinois, a New York and a New Jersey case, and some English cases). But it is generally held in this country that the intentional non-disclosure of a latent defect by the seller when he knows that it is unknown to the buyer, is fraudulent (citing cases from more than fifteen States) among others Dowling v. Lawrence, 58 Wis.

282, 16 N. W. Rep. 552, in which it was held that knowledge and concealment by the vendor of the fact that the horse was blind may amount to a positive fraud which will avoid a sale, even though there was no express warranty." In Maynard v. Maynard, 49 Vt. 297, there was a hidden defect in a bull, though sound in appearance. The defendant knew of the defect, but did not disclose his knowledge to the buyer, It was held to be fraudulent concealment. In Tiedeman on Sales, Section 167, it is said: "The general rule is that the seller's silence when he knew that the buyer is exaggerating the value or qualities of the goods, is not a fraud. And this is certainly the general rule where the buyer has equal facilities with the seller for discovering the defects in the goods. The seller is not obliged to point out the defects, if they can be discovered by the buyer with reasonable diligence. And it has been held to be no fraud, for the vendor to omit *unintentionally* to disclose defects which could not be discovered so readily by the buyer, the intention to deceive being a necessary element of fraud. But, if he intentionally withholds information of the existence of defects, which are not equally within the ken of the buyer, as where poison has been spilled upon fodder, or where animals are sold for breeding purposes, when the vendor knows they are impotent, it is undoubtedly a fraud." In the instant case the vendor of the mule, Kitchen, had owned the mule about a month when he swapped to Long. The defect in the mule was so latent, that Kitchen, who was a horse trader, was imposed on when he got it. After he discovered the defect he told two of the witnesses that he would get even, and trade it to some one else (this is not denied). He intentionally concealed the defect in the mule which was one not to be discovered by ordinary observation. When he swapped with Long he falsely

stated to him he did not know anything about the mule, and this possibly threw Long off his guard, and left him to be governed by the deceptive appearance of the mule. Under these circumstances the charges requested by plaintiff in error were properly refused.

The judgment of the Circuit Court is affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.