449 So.2d 344 (1984)
Clarence H. JOHNSON and Dana Johnson, His Wife, Appellants/Cross-Appellees,
v.
Morton DAVIS and Esther Davis, His Wife, Appellees/Cross-Appellants.
No. 83-1574.
District Court of Appeal of Florida, Third District.
April 3, 1984.
Rehearing Denied May 9, 1984.
*345 Smith & Mandler and Mitchell W. Mandler, Miami, for appellants/cross-appellees.
Stanley M. Newmark, Miami, Joseph G. Abromovitz, Boston, Mass., for appellees/cross-appellants.
Before HENDRY, BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
The Johnsons, the defendants in an action to rescind a real estate sales contract, appeal a final judgment that returned to the Davises $26,000 of the Davises' $31,000 deposit. The Davises cross-appeal the trial court's award of $5,000 of the deposit to the Johnsons and the trial court's failure to award the Davises costs and fees. For the reasons which follow we affirm the trial court's return of the majority of the deposit to the Davises but reverse those portions of the final judgment which awarded $5,000 of the deposit to the Johnsons and failed to award the Davises costs and fees. Accordingly, we remand with directions to return to the Davises the balance of their deposit, with interest, and to award them costs and fees. The remainder of the issues on appeal are without merit and the remainder of the trial court's final judgment is, therefore, affirmed.

*346 I
In early May of 1982, "a season of calm weather," the Davises first saw and within two days entered into a contract to buy for $310,000 the Johnsons' home, which at the time was three years old. The form contract, which was provided by the Johnsons' broker, required a $5,000 deposit payment, an additional $26,000 deposit payment within five days and a closing by June 21, 1982. The contract provided for payment to the "prevailing party" of all costs and reasonable fees in any contract litigation and:
F. Roof Inspection: Prior to closing at Buyer's expense, Buyer shall have the right to obtain a written report from a licensed roofer stating that the roof is in a watertight condition. In the event repairs are required either to correct leaks or to replace damage to facia [sic] or soffit, Seller shall pay for said repairs which shall be performed by a licensed roofing contractor.
Before the Davises made the additional $26,000 deposit payment, Mrs. Davis noticed some buckling and peeling plaster around the corner of a window frame in the family room and stains on the ceilings in the family room and kitchen of the home. Upon inquiring, Mrs. Davis was told by Mr. Johnson that the window had had a minor problem that had long since been corrected and that the stains were wallpaper glue and the result of ceiling beams being moved. There is disagreement among the parties as to whether Mr. Johnson also told Mrs. Davis at this time that there had never been any problems with the roof or ceilings. The Davises thereafter paid the remainder of their deposit and the Johnsons vacated the home and moved to their new residence in Chicago. Several days later, following a heavy rain, Mrs. Davis entered the home and discovered water "gushing" in from around the window frame and from the ceiling of the family room and from the light fixtures, from around the glass doors and from above the stove in the kitchen. Domestics employed by the Johnsons' broker were scurrying about trying to contain the water with rags and buckets. Two roofers hired by the Johnsons' broker concluded that for under $1,000 they could "fix" certain leaks in the roof and by doing so make the roof "watertight." Three roofers hired by the Davises found that the roof was inherently defective, that any repairs would be temporary as the roof was "slipping," that only a new $15,000 roof could be "watertight" and that certain repairs to the walls, at an additional cost of $10,000, would be necessitated by damage attributable to the defective roof. Because the existing roof could not be made "watertight" the Davises demanded, on June 18, 1982, the return of their deposit. The Johnsons offered to "fix" the leaks in the existing roof.
The Davises filed a complaint alleging breach of contract and fraud and misrepresentation and seeking rescission of the contract and the return of their deposit. The Johnsons counterclaimed seeking the deposit as liquidated damages. The Davises argued, during the course of the proceedings, that paragraph F of the contract required the roof to be "watertight" but provided for only "minor" repairs and that, therefore, because the roof required other than "minor" repairs their only contractual remedy was rescission of the contract and the return of their deposit. During direct examination by the Davises' counsel, Mr. Johnson denied having told Mrs. Davis, on the day that she had inquired about the ceiling stains and peeling plaster, that there had never been any problems with the roof or ceilings. He claimed, rather, admitting that a leak had developed in the roof over the kitchen two years earlier, when the house was less than a year old, to have told Mrs. Davis of the roof problem, for the first time, on the day of her inquiry. Without findings of fact, the trial court entered its final judgment returning to the Davises $26,000 of their deposit plus interest, awarding the Johnsons $5,000 of the Davises' deposit plus interest, and awarding neither party costs or fees.

II
Because the trial court included no findings of fact in its order, we can but *347 speculate as to the trial court's reasoning in returning only $26,000 of their deposit to the Davises. A trial court's reasoning, of course, is not the controlling factor in determining whether an appellate court will affirm the trial court's decision, the fundamental question in an appeal being whether the result reached by the trial court is correct, for whatever reason. E.g., In re Estate of Yohn, 238 So.2d 290 (Fla. 1970). But in finding, under the only theory the trial court could logically have used in returning only part of their deposit to the Davises, that the trial court was correct in returning that portion of the deposit, we must conclude that the trial court erred in not returning to the Davises the remainder of their deposit.
It is apparent from the record that the trial court did not accept the Davises' characterization of paragraph F of the contract, for if the trial court had found there to be a breach of paragraph F, the trial court would have ordered the return of the Davises' entire deposit: there is no logical way to distinguish, under the breach of contract theory, the two deposit payments. Because of our holding we need not reach the issue of whether the trial court erred in this respect.
Under the fraud theory, however, the trial court could logically have made just such a distinction. The evidence before the trial court supports a finding that after receiving the $5,000 deposit payment the Johnsons affirmatively represented to the Davises that there were no problems with the roof, and thereafter received the additional $26,000 deposit payment. The trial court's ruling, insofar as it ordered the return of the $26,000 deposit payment, is therefore supported by the supreme court's decision in Besett v. Basnett, 389 So.2d 995 (Fla. 1980), wherein it was held "that a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him," id. at 998. Accordingly, upon that authority, we affirm the trial court's return of their $26,000 deposit payment to the Davises. See Gold v. Wolkowitz, 430 So.2d 556 (Fla. 3d DCA), review denied mem., 437 So.2d 677 (Fla. 1983).
In contradistinction to the circumstances of the $26,000 deposit payment, there was no evidence before the trial court that before receiving the $5,000 deposit payment the Johnsons affirmatively represented to the Davises that the roof was without defect. The trial court, therefore, logically could have found that this key factual distinction necessitated a conclusion that although the $26,000 deposit payment was induced by an affirmative misrepresentation, and should therefore be returned, the $5,000 deposit payment was not, and therefore need not be returned. On the record before us, we can find no other way logically to explain the nature of the trial court's final judgment.
Indeed, there is authority for such a distinction. In Banks v. Salina, 413 So.2d 851 (Fla. 4th DCA 1982), a case involving the sale of a used home with a leaky roof and defective swimming pool, the district court summarily reversed that part of the trial court's order that awarded the buyers damages for repairs not provided for in the contract of sale. The reversal was founded upon the district court's determination that, although the sellers had sold a defective home to the buyers without disclosing the presence of defects, of which the sellers evidently were aware, "[i]n Florida, there is no duty to disclose when parties are dealing at arms length," id. at 852. In support of this proposition the court in Banks cited Ramel v. Chasebrook Construction Co., 135 So.2d 876 (Fla. 2d DCA 1961), wherein there is dictum that "[i]n the absence of a fiduciary relationship, mere nondisclosure of all material facts in an arm's length transaction is ordinarily not actionable misrepresentation unless some artifice or trick has been employed to prevent the representee from making further independent inquiry," id. at 882.
However, having acknowledged this authority, by which we are not bound and which we feel represents an offensive view *348 of societal duties and fails to embody the ideals which the law should always strive to reflect, we choose not to follow it.

III

A
In Florida, the elements necessary to establish the existence of a fraudulent misrepresentation are that (1) the defendant knew of the falsity of the representation, (2) the plaintiff was meant to rely upon the misrepresentation, (3) the plaintiff in fact relied upon the misrepresentation and (4) the plaintiff was thereby damaged. See American International Land Corp. v. Hanna, 323 So.2d 567 (Fla. 1975); Mizell v. Upchurch, 46 Fla. 443, 35 So. 9 (1903).
It has commonly been stated, particularly in older cases, that the misrepresentation must be affirmative and that a passive failure to disclose facts of which the defendant was aware will not support an action premised upon fraud and deceit. See W. Prosser, Law of Torts § 106 (4th ed. 1971). "This rule of course reflected the dubious business ethics of the bargaining transactions with which deceit was at first concerned, together with a touch of the old tort notion that there can be no liability for nonfeasance, or merely doing nothing [citation omitted]," id.; and it has been said that this rule may properly be applied where the undisclosed fact is patent or the plaintiff has equal opportunity of obtaining information which he may be expected to make use of or where the defendant has no reason to think that the plaintiff is acting under any misapprehension, see id.
In Kitchen v. Long, 67 Fla. 72, 64 So. 429 (1914), however, the supreme court observed that
"[s]ome cases carry the doctrine of caveat emptor so far as to hold that the seller is under no obligation to communicate the existence of defects in the thing sold not discoverable by examination... . But it is generally held in this country that the intentional non-disclosure of a latent defect by the seller, when he knows that it is unknown to the buyer, is fraudulent ...,"
Id. at 75, 64 So. at 430 (quoting 35 Cyclopedia of Law & Procedure [Sales] 69 (1910)), and "`if he intentionally withholds information of the existence of defects, which are not equally within the ken of the buyer ... it is undoubtedly a fraud,'" 67 Fla. at 76, 64 So. at 430 (quoting C. Tiedeman, Sales § 167 (18-)).
Still, there exist
occasional modern cases which have held that so long as one adversary does not actively mislead another, he is perfectly free to take advantage, no matter how unfair, of ignorance; and that the owner of a dwelling which he knows to be riddled with termites can unload it with impunity upon a buyer unaware, and go on his way rejoicing [citation omitted],
W. Prosser, supra. Thus, in Swinton v. Whitinsville Savings Bank, 311 Mass. 677, 42 N.E.2d 808 (1942), the court acknowledged that the buyer of a termite-infested home possessed "a certain appeal to the moral sense," id. at 679, 42 N.E.2d at 809, but concluded that, it having been asserted by the plaintiff that the seller knew of the termites and was under a duty to disclose their presence, the law had not yet "reached the point of imposing upon the frailties of human nature a standard so idealistic," id. at 678-79, 42 N.E.2d at 808-09.
Because these "occasional" cases "are surely singularly unappetizing cases," W. Prosser, supra, courts have developed a number of exceptions to the "human frailties" approach, see id., and
[b]eyond this ... a rather amorphous tendency ... to find a duty of disclosure in cases where the defendant has special knowledge, or means of knowledge, not open to the plaintiff, and is aware that the plaintiff is acting under a misapprehension as to facts which would be of importance to him, and would probably affect his decision,
id.

B
This tendency has crystallized in a recent line of cases addressing the sale of used *349 homes which have latent material defects of which the seller is aware but which he has not disclosed to the buyer.
In Weintraub v. Krobatsch, 64 N.J. 445, 317 A.2d 68 (1974), the buyers, after entering into a contract of sale for a six-year-old home which they had previously seen only while it was illuminated, visited the home at night and, turning on the lights, were "`astonished to see roaches literally running in all directions, up the walls, drapes, etc.,'" id. at 447, 317 A.2d at 70. As here, the buyers sought rescission and the return of their deposit. See id. Although the contract provided that the buyers had inspected the property and were fully satisfied with its physical condition, that no representations had been made and that no responsibility for the condition of the property was assumed by the seller, id. at 447, 317 A.2d at 69-70, the New Jersey court rejected the seller's caveat emptor argument, which had relied heavily on Swinton, see Weintraub, 64 N.J. at 456, 317 A.2d at 74, and reversed the trial court's summary judgment award of the deposit to the seller, see id. at 457, 317 A.2d at 75. In doing so, the New Jersey court conducted an extensive survey of the modern trend toward abrogation of the caveat emptor doctrine and concluded that
[o]ur courts have come a long way since the days when the judicial emphasis was on formal rules and ancient precedents rather than on modern concepts of justice and fair dealing. While admittedly our law has progressed more slowly in the real property field than in other fields, there have been notable stirrings even there. [Citations omitted.] ... our law should be based on current notions of what is "right and just." [Citation omitted,]
id. at 456, 317 A.2d at 74-75.
The court in Posner v. Davis, 76 Ill. App.3d 638, 32 Ill.Dec. 186, 395 N.E.2d 133 (1979), was confronted with facts similar to those before us. The buyers, who had taken possession of the home, sought damages from the sellers after discovering leaks in the roof and basement flooding and after the home suffered wall and ceiling damage which was caused by the leaking roof. The sellers testified that the basement had always flooded after a heavy rain and that approximately one year to eighteen months prior to selling the home they had experienced roof leakage which had caused damage to the wall. Id. at 640-41, 32 Ill.Dec. at 188, 395 N.E.2d at 135.
Plaintiffs testified that the only statement either defendant made to them concerning any of the defects in the house took place on June 13, 1973, when Sander Davis allegedly told Harry Posner that defendants had never had a basement flooding problem. Defendants maintain that this alleged statement by Sander Davis, which at trial he denied having made, was plaintiffs' only evidence of fraud and that plaintiffs could not have relied on it when they entered into a real estate sales contract on June 8, 1973, because plaintiffs concede the statement was not made until five days later.
Id. at 641, 32 Ill.Dec. at 188, 395 N.E.2d at 135. Observing that "the modern trend in the law regarding the sale of a home is away from strict adherence to the doctrine of caveat emptor," id. at 644, 32 Ill.Dec. at 190, 395 N.E.2d at 137, and that the buyers had testified that they would not have bought the home if they had known about the flooding or leakage, the court concluded that "the evidence clearly shows defendants knew of and failed to disclose," id., latent material defects. The court, therefore, affirmed the trial court's finding of fraud on the part of the sellers, see id. at 644, 32 Ill.Dec. at 191, 395 N.E.2d at 138.
We agree with the reasoning and results in Weintraub, Posner and the cases cited in accordance below and hold that where the seller of a used home knows of facts materially affecting the value or desirability of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer. Accord Reed v. King, 145 Cal. App.3d 261, 193 Cal. Rptr. 130 (1983) (home the site of multiple murder); *350 Schnell v. Gustafson, 638 P.2d 850 (Colo.Ct.App. 1981) (uranium tailings under home); Flakus v. Schug, 213 Neb. 491, 329 N.W.2d 859 (1983) (flooding in basement); Thacker v. Tyree, 297 S.E.2d 885 (W. Va. 1982) (cracked walls and foundation problems); see Lingsch v. Savage, 213 Cal. App.2d 729, 29 Cal. Rptr. 201 (1963) (stating rule as applicable to real property in general).[1]

C
As we have stated, the only interpretation of the trial court's final judgment logical in light of the record before us is that the $5,000 deposit payment was not returned to the Davises because it was not induced by an affirmative misrepresentation. It is obvious, however, because of Mr. Johnson's admission during his testimony, that the Johnsons were aware of roof problems prior to entering into the contract of sale and receiving the $5,000 deposit payment. Although the testimony was certainly meant to dispel any belief that the Johnsons affirmatively misrepresented the condition of the home, the trial court apparently chose not to so interpret the facts. All that can now be made of Mr. Johnson's testimony is that it is an unrebutted admission that the Johnsons knew of roof problems but did not disclose their existence to the Davises, if at all, until after receiving the $5,000 deposit payment. Mr. Johnson was, quite simply, if none too originally, hoisted with his own petard.
Affirmed in part, reversed in part and remanded with directions.
BASKIN, J., concurs in result only.
NOTES
[1] Although our holding is limited by the facts before us to the sellers of used homes, we realize that this duty is equally applicable to real estate brokers and to all forms of real property, new and used. See, e.g., Saporta v. Barbagelata, 220 Cal. App.2d 463, 33 Cal. Rptr. 661 (1963) (real estate broker); Lingsch (commercial property); Cohen v. Vivian, 141 Colo. 443, 349 P.2d 366 (1960) (builder); Griffith v. Byers Construction Co. of Kansas, 212 Kan. 65, 510 P.2d 198 (1973) (developer); Jenkins v. McCormick, 184 Kan. 842, 339 P.2d 8 (1959) (builder); Lynn v. Taylor, 7 Kan. App. 2d 369, 642 P.2d 131 (1982) (real estate broker); Smith v. National Resort Communities, Inc., 585 S.W.2d 655 (Tex. 1979) (developer).