604 So.2d 827 (1992)
Paula AMOROSO and Robert Amoroso, Her husband, Appellants,
v.
SAMUEL FRIEDLAND FAMILY ENTERPRISES, d/b/a the Diplomat Hotel, Inc., a Florida corporation; the Diplomat Hotel, Inc., a Florida Corporation; Sunrise Water Sports, Inc., a Florida Corporation; William Thoral, As the Last Known Director and Officer of Sunrise Water Sports, Inc., Atlantic Sailing Center, Inc., a Florida Corporation; Florida Insurance Guarantee Association, Inc.; Robin Rhodenbaugh; Mistral, Inc., a Florida corporation; Nautilis, Inc., a Florida corporation; and Rhodenbaugh's Sheet Metal Repairs, Inc., a Florida corporation, Appellees.
No. 90-2773.
District Court of Appeal of Florida, Fourth District.
April 8, 1992.
On Motion for Rehearing October 14, 1992.
*830 C. Robert Murray of Canning, Murray & Feltz, P.A., Miami, for appellants.
Richard A. Sherman and Rosemary B. Wilder of Law Offices of Richard A. Sherman, P.A., and Gregg J. Pomeroy of Pomeroy & Pomeroy, P.A., Fort Lauderdale, for appellees  Samuel Friedland Family Enterprises, Diplomat Hotel, Inc., Bill's Sunrise Boat Rentals-Sunrise Water Sports, Inc., Sunrise Water Sports, Inc., and William Thorla.
David L. Wills of Vernis & Bowling, P.A., Fort Lauderdale, for Rhodenbaugh and FIGA.
Bill Ullman, Miami, for Atlantic Sailing Center, Inc.
WARNER, Judge.
Appellants claim that the trial court erred in directing a verdict against them in this negligence/products liability case. We affirm in part and reverse in part.
Appellants, Mr. and Mrs. Amoroso, were guests at the Diplomat Hotel in Hollywood, Florida. During their stay they decided to rent a sailboat. The sailboat stand was located on the Diplomat's premises and was advertised in the guest rooms. Reservations were made through the hotel telephone system, and charges for the rentals were billed to the hotel rooms. However, the sailboats were owned by Sunrise Water Sports, Inc. (Sunrise) which contracted with the Diplomat to operate the rental stand. Sunrise in turn had an arrangement with Atlantic Sailing Center, Inc. to handle the rentals. Atlantic was organized to operate the rental business at the Diplomat.
Mr. Amoroso had rented sailboats two times previously from the stand without incident. On the third time Mr. Amoroso arranged for a sailboat rental, a crossbar on the sailboat broke, causing the mast to fall, striking Mrs. Amoroso. As a result of injuries sustained, the Amorosos filed suit against the Diplomat, Sunrise, Atlantic, and a welder who had repaired the crossbar a few days before the accident. The sixth amended complaint alleged causes of action for negligent repair and maintenance, breach of implied warranties of fitness and merchantability, and strict liability against Diplomat, Sunrise, and Atlantic. The complaint alleged negligence against the welder.
At trial, the Amorosos offered several experts. While much of their testimony was excluded by the trial judge for various reasons, an expert on marine accidents was permitted to testify that in his opinion the cracked crossbar which had been welded together before the accident should have been replaced rather than repaired, because the bar was subject to a lot of stress in sailing and could not take such stress with the weld. The welder also testified that the crossbar failed right next to the weld, and that in some cases the area next to the weld is weakened by the weld. Finally, the testimony established that the accident occurred as a result of the crossbar breaking.
The trial court directed a verdict in favor of Atlantic and against appellants on the ground that Atlantic was at most the agent of Sunrise and that anything it did should be held against Sunrise as the principal. He next directed a verdict on the implied warranty counts without specifically addressing the implied warranty of fitness for ordinary use or merchantability. Next, the court directed a verdict in favor of the welder on the grounds that there was no evidence presented that the weld was negligently done, and there was no legal duty on the welder to advise Atlantic or Sunrise that the crossbar had to be replaced rather than repaired. As to the strict liability counts, the trial court stated that "there is no such thing as strict liability" and directed a verdict. From the reading of all of the arguments, we believe that the court was of the opinion that the doctrine of strict liability would not apply in cases of rentals. The trial court also directed a verdict in favor of the Diplomat Hotel on the ground that there was not a joint venture or apparent authority established between the Diplomat and Sunrise or Atlantic to hold the Diplomat liable. Finally, the judge directed a verdict in favor of Sunrise on the negligence claim because, as he read the complaint, he thought appellants were *831 suing the Diplomat in the negligence count (count IV). Thus, he did not rule directly on whether there was sufficient evidence of negligent maintenance or repair to go to the jury.
The appellants raise several points on appeal. First, they claim that the trial court erred in directing a verdict as to Diplomat, Sunrise, and Atlantic because the evidence was sufficient to show either an actual or apparent agency relationship between them. Second, the evidence established a joint venture among the parties sufficient to withstand a directed verdict. Third, the court erred in its direction of a verdict on the strict liability and implied warranty counts. Fourth, the court erred in directing a verdict against the welder. Finally, they claim that several evidentiary errors require reversal.
The starting point of any review of a final judgment entered on a directed verdict is the general pronouncements regarding the direction of verdicts. A trial court may direct a verdict against a plaintiff only if no evidence is introduced on which the jury may lawfully find for the plaintiff. 55 Fla.Jur.2d Trials § 84 (1982) and cases cited therein. In other words, where there is any evidence, albeit disputed, which supports the cause of action alleged, the trial court should not remove the case from the jury's consideration. Furthermore, on appeal a trial court's reasoning is not the controlling factor. The question before the court on review is whether the result reached by the court was correct. See Johnson v. Davis, 449 So.2d 344 (Fla. 3d DCA 1984); Gavel v. Girton, 183 So.2d 10 (Fla. 2d DCA 1966).

AGENCY
In order to prove an apparent agency between the Diplomat Hotel and Atlantic or Sunrise, the Amorosos must prove:
(1) A representation by the principal;
(2) Reliance on that representation by a third person; and
(3) A change of position by the third person in reliance upon the representation to his detriment.
Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla. 1983); Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. 4th DCA 1991). As noted in Shelburne, the doctrine rests on appearances created by the principal, not the agent. Id. at 333. Shelburne also cites with approval Sapp v. City of Tallahassee, 348 So.2d 363 (Fla. 1st DCA 1977), which states:
[C]ontrol and domination need not be actual but may be binding upon the principal if apparent. That is, if the principal has held the agent out to the public as being possessed of the requisite authority, and a third person is aware of his authority and has relied on it to his detriment, the principal is estopped from denying the agency relationship.
Id. at 367.
Here there was sufficient evidence of each element of apparent agency to preclude the direction of a verdict against the Diplomat. The Diplomat placed brochures in each room advertising the availability of sailing at the hotel. The rental stand was on the Diplomat Beach. Both Mr. and Mrs. Amoroso testified that neither Sunrise nor Atlantic were identified as the owner or operator at the beach. The sailboats were paid for by charging them to the room and leaving the room key as security for the rental. Mrs. Amoroso also testified that she saw in the brochure a sail with the Diplomat logo on it. Just as in Shelburne this evidence taken together was sufficient to show that the Diplomat represented to their guests that the sailboat rental stand was a part of the hotel operations.
Secondly, there was evidence of the Amorosos' reliance upon the representation of the Diplomat's control of the sailboat rentals. Regarding her failure to inspect the sailboat being rented, Mrs. Amoroso testified, "I would assume that if the Diplomat is renting something, it is in good condition. I didn't even think that there could be possibly anything wrong with it." Similarly, her husband testified that he rented the sailboat from the Diplomat and "[I] had full faith on [sic] the Diplomat Hotel. If the Diplomat Hotel was renting something, *832 why should I inspect it? ... I put my trust in the Diplomat Hotel".
Finally, the third element is met by the rental of the sailboat by the Amorosos, which led to the accident and Mrs. Amoroso's injuries. Since all of the elements of apparent agency were met, it was error to direct a verdict as to the Diplomat on the ground that there was no evidence of apparent agency offered.
With respect to the directed verdict in favor of Atlantic, the trial court concluded that since Atlantic was the agent of Sunrise, and a third party cannot recover both against an agent and its principal for negligence, Atlantic as agent would be entitled to a directed verdict. As this case involved the existence of at most an "undisclosed" agency relationship between Sunrise and Atlantic, the appellants were entitled to hold either the agent or the principal liable. Collins v. Aetna Ins. Co., 103 Fla. 848, 138 So. 369 (1931). However, while the appellants had to elect which party to hold liable, they were not required to elect until after the verdict as to whom they wished to take judgment against. Bertram Yacht Sales, Inc. v. West, 209 So.2d 677 (Fla. 3d DCA 1968). Nevertheless, they did not object or dispute their right to hold both Atlantic and Sunrise in the case until after the verdict and in fact argued to the court that Sunrise was the one who should be held liable for any derelictions of Atlantic. In light of this concession, we find no reversible error with respect to the directed verdict in favor of Atlantic.
With respect to the directed verdict on the theory that the Diplomat, Sunrise, and Atlantic were joint venturers, we affirm.

IMPLIED WARRANTY OF MERCHANTABILITY
Appellants sued the Diplomat and Sunrise on the theory of breach of implied warranty of merchantability or fitness for ordinary use. Appellees first claim that there is no implied warranty of fitness or merchantability between a lessor and lessee. We disagree. In W.E. Johnson Equipment Co. v. United Airlines, Inc., 238 So.2d 98 (Fla. 1970), the court extended implied warranties to lease transactions in the commercial setting, noting "[p]ublic policy demands that in this day of expanding rental and leasing enterprises the consumer who leases be given protection equivalent to the consumer who purchases." Id. at 100. While the court specifically addressed the implied warranty of fitness for a particular purpose, the public policy extension made by the court applies equally, if not more so, to implied warranties of merchantability or fitness for ordinary use. See Ford v. Highlands Ins. Co., 369 So.2d 77, 78 n. 2 (Fla. 1st DCA 1979). In fact, the Johnson court noted that the precursor for its opinion was its case of Williamson v. Phillipoff, 66 Fla. 549, 64 So. 269 (1914), which held that a bailed chattel must be of a character and condition as contemplated by the contract, and the bailor would be liable for damages caused by defects in the product. That standard is not appreciably different from an implied warranty of merchantability which requires that the goods be fit for the ordinary purpose of such goods. See § 672.314, Fla. Stat. (1989). Appellees have advanced no argument as to why the public policy arguments which impelled the court to apply an implied warranty of fitness for a particular purpose to lease transactions would not apply equally to an implied warranty of fitness for ordinary use. Since Johnson, the commercial lease business has only grown at an increased rate. Especially in the context of the short term rental, the renter must rely on the lessor to provide a chattel fit for its ordinary use. The renter of a car expects that it will function as an automobile, and its wheels won't fall off during the rental period. Likewise, the renter of a sailboat should expect that its mast will not break and fall down during the period of the rental. We hold that there is an implied warranty of fitness for ordinary use in a lease transaction.[1]
*833 Appellees next argue that even if Johnson does apply, it would not apply to them under the standards enunciated in the opinion because they are not a "mass dealer in the chattel leased". Johnson, 238 So.2d at 100. This statement in Johnson is taken out of context. The court listed several factors to take into consideration in determining whether the particular lease transaction would imply a warranty of fitness. One of those criteria was whether the lessor was a mass dealer in the leased chattel, "or whether the transaction was an isolated occurrence." Id. What the court was implying was that the lease transaction should be of a commercial nature and that the lessor be in the business of leasing the particular chattel. There is no magic number of chattels which must be offered for lease before the court will deem that an implied warranty will exist. However, we have no problem in determining that appellees' operation constitutes a commercial leasing operation of boats for profit and that commercial reasonableness would dictate that the lessor should be responsible for damages caused by the defects in the boats which it leases.
The elements to prove liability under an implied warranty theory are:
(1) That the plaintiff was a foreseeable user of the product.
(2) That the product was being used in the intended manner at the time of the injury;
(3) That the product was defective when transferred from the warrantor;
(4) That the defect caused the injury.
Sansing v. Firestone Tire & Rubber Co., 354 So.2d 895 (Fla. 4th DCA 1978). However, in Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla. 1988), the supreme court held that a no-privity claim for breach of implied warranty was abolished by the adoption of strict liability in Florida in West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976). Therefore with respect to the first element, the plaintiff must be in privity with the warrantor.
Appellees have made a claim that it was Mr. Amoroso who rented the boat, thus eliminating the privity requirement as to Mrs. Amoroso. The evidence is susceptible to differing constructions. Both Mr. and Mrs. Amoroso went to the sailboat rental window. Although Mr. Amoroso handed the attendant the key, the rental was charged to the room which was in both Mr. and Mrs. Amoroso's name. Therefore, there was sufficient evidence of privity to avoid a directed verdict.
Appellees also contend that there was no proof that there was any defect in the sailboat from the time it left the manufacturer, citing as authority Vandercook & Son, Inc. v. Thorpe, 395 F.2d 104 (5th Cir.1968). While an allegation of a manufacturing defect is necessary in a cause of action for breach of implied warranty against the manufacturer or its dealer, where a lessor is being sued, the defect in the product may and frequently will arise after the manufacture. The lessor is liable for defects in the product leased, especially if created by the lessor or of which the lessor has knowledge. As in the case of strict liability, the policy of the law is to place the risk of loss associated with the use of defective products on those who have created the risk and who can best protect against it. Certainly, the commercial lessor is in a better position than the lessee to supervise the condition of its boats, cars or the like and keep them free of defects. In like manner, a seller of used cars may be liable for implied warranties of merchantability and fitness, unless properly disclaimed, even though the defects asserted arose after the manufacture of the car. See Bert Smith Oldsmobile, Inc. v. Franklin, 400 So.2d 1235 (Fla. 2d DCA 1981). The lessor is in a similar position. From the evidence presented in this case it is apparent that there was a defect in the rail which caused it to crack and the mast to topple. Thus, the trial court erred in *834 directing a verdict on the implied warranty count.

STRICT LIABILITY
The trial court also erred in directing a verdict on the strict liability counts against the Diplomat and Sunrise. In West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976), the supreme court adopted the doctrine of strict liability as set forth in Restatement (Second) of Torts § 402A (1965), which provides that the seller of a product "in a defective condition unreasonably dangerous to the user or consumer" is subject to liability for harm caused to the ultimate consumer if (1) the seller is engaged in the business of selling the product, and (2) it is expected to and does reach the consumer without substantial change in the condition in which it is sold. The doctrine also eliminates any requirement of privity between the ultimate consumer and the seller. Id. at 84.
Appellees claim that the trial court correctly granted a directed verdict on the strict liability counts because (1) Mrs. Amoroso was not the renter of the sailboat; (2) that there was no proof of a manufacturing defect; and (3) that the doctrine of strict liability does not extend to lessors.[2] The first claim is completely without merit because strict liability does not require privity to impose liability. Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla. 1988); Restatement (Second) of Torts § 402A(2)(b) (1965). The second contention is likewise without merit. Even if no manufacturing defect is shown, the seller is liable for defects over which it has control. As the court stated in Mobley v. South Florida Beverage Corp., 500 So.2d 292, 293 (Fla. 3d DCA 1986):
Since a retailer is liable for defects over which it has no control, it is all the more obviously responsible to an innocent purchaser like the plaintiff for a defect which was created only after the product came into its possession  and for which, therefore, the manufacturer and others high up in the distributive chain are not liable.
There was evidence here that the crossbar had broken and had been welded back together. An expert testified that replacement rather than repair of the broken bar was required as the repaired bar could not stand the stresses of sailing. Therefore, there was sufficient evidence of a defect in the boat which existed at the time the boat was rented to the Amorosos to sustain a cause of action.
Finally, the claim that strict liability does not apply to lessors has been addressed only briefly in Florida cases. In Futch v. Ryder Truck Rental, Inc., 391 So.2d 808 (Fla. 5th DCA 1980), the court applied strict liability to a commercial lessor, and in North Miami General Hosp., Inc. v. Goldberg, 520 So.2d 650 (Fla. 3d DCA 1988), the court noting that the doctrine had been applied in other consumer contexts including lease transactions, explained that:
[T]hose who profit from the sale or distribution of a particular product to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect. The rationale of the doctrine thus inherently requires a defendant which is in a business within the product's distributive chain.
Id. at 652. By far the vast majority of courts which have considered the question have extended strict liability to the commercial lessor. See Strict Liability of Lessors of Personalty, 52 A.L.R.3d 121 (1973). Thus, we hold that the doctrine of strict liability applies to a commercial lease transaction and that the court erred in directing a verdict holding that it did not apply.

NEGLIGENCE
Because of our holding that the Diplomat hotel may be liable on a theory of *835 apparent agency theory, given the evidence presented that there was negligence in failing to replace the crossbar, we also hold that the court erred in directing a verdict on the negligence count against the Diplomat for failing through its apparent agents to properly inspect, maintain and repair the sailboat. While the appellees and trial court somehow thought that a claim that the crossbar should have been replaced rather than repaired did not constitute negligent maintenance or repair, we disagree. To maintain something means to keep it in good condition and repair. By failing to replace the crossbar and repairing it instead, the appellants were offering proof that it was not being kept in good condition. This is sufficient to survive a directed verdict.
Finally, with respect to the directed verdict in favor of Sunrise on the negligence count, we disagree with the trial court that the count alleged a cause of action in negligence against the Diplomat rather than Sunrise. Although the count alleged that Sunrise was the agent of the Diplomat, it alleged that Sunrise owned the boat in question. It also alleged that the defendants negligently inspected and/or maintained and/or repaired the boat resulting in the defective condition which caused injury to Mrs. Amoroso. This sufficiently states a cause of action in negligence against Sunrise. We thus reverse the directed verdict against Sunrise on the negligence count.
We affirm the directed verdict in favor of the welder. There was no evidence presented from which a jury could conclude that the weld was negligently done, nor that the welder had a duty to inform the sailboat owner that the bar should be replaced rather than repaired, nor do we deem that he had such a duty as a matter of law.
While there was evidence produced through cross-examination which shed doubt on some of the particulars of the appellants' case, these are issues for the jury to decide. The appellants put on evidence sufficient to survive a directed verdict and on which they were entitled to argue to the jury. We therefore remand for a new trial consistent with this opinion. Because of our disposition of the points on directed verdict, we do not address the remaining evidentiary points raised.
FARMER, J., concurs.
LETTS, J., concurs in conclusion only.

ON MOTION FOR REHEARING
PER CURIAM.
We deny rehearing but certify the following question as one of great public importance:
WHETHER THE DOCTRINE OF STRICT LIABILITY AS TO DEFECTIVE PRODUCTS EXTENDS TO COMMERCIAL LEASE TRANSACTIONS OF THOSE PRODUCTS?
WARNER, J., concurs.
FARMER, J., concurs specially without opinion in denial of rehearing only.
LETTS, J., dissents with opinion.
LETTS, Judge, dissenting in part.
I would grant the motion for rehearing insofar as it pertains to the issue of the Diplomat Hotel's strict liability.
The holding in West v. Caterpillar Tractor Co., Inc., 336 So.2d 80, 89 (Fla. 1986), was that "a manufacturer may be held liable under the theory of strict liability in tort." (Emphasis supplied). Admittedly, the Caterpillar Tractor court spoke approvingly of, and adopted the ALI Restatement (Second) of Torts § 402A, which refers to "seller" as distinct from manufacturer;[1] however, it is obvious to me that the actual holding is restricted to manufacturers. Not only was the Caterpillar Tractor defendant a manufacturer making caterpillar tractors, but the words "manufacture," *836 "manufactured," or "manufacturer," appear in excess of twenty times in the opinion. True, the words "seller" or "distributor" appear, but only infrequently, and the word "lessor" is never utilized. As a consequence, though I dissent in part, I wholeheartedly approve of the certified question. Our Supreme Court may well expand the doctrine, but in my view, it has not yet done so and neither should we.
The other Florida cases cited by the majority in support of the application of the doctrine to a lessor are not convincing. For example, in Mobley v. South Florida Beverage Corporation, 500 So.2d 292, 293 (Fla. 3d DCA 1986), rev. denied, 509 So.2d 1117 (Fla. 1987), the court apparently upheld a strict liability count against a retailer specifically noting that "others higher up the distributive chain are not liable." The Diplomat Hotel is clearly not the retailer in the case now before us. That doubtful distinction belongs to Sunrise and/or Atlantic who own the six boats and rent them not necessarily to Diplomat Hotel guests. The Diplomat Hotel unquestionably is not higher up in the distributive chain and therefore under Mobley, is not strictly liable.
The other case relied upon by the majority is Futch v. Ryder Truck Rental, 391 So.2d 808 (Fla. 5th DCA 1980), where the court, in noting the abandonment of the strict patent danger doctrine as an exception to liability, extended it to lessors. The discussion in that case, as it might pertain sub judice, is no model of clarity, but as the name Ryder Truck Rental suggests, the Fifth District was talking about a nationwide lessor whose principal course of business is the mass rental of trucks. I do not believe there is a compelling analogy between Ryder Truck Rental and a hotel primarily engaged in the hotel business which leases a beach to the owner of six small Hoby Cats (Tequila Sunrise models). By the same token, I do not believe the words "seller" or "lessor" under section 402A of the Restatement were ever intended, under Caterpillar Tractor, to impose strict liability under the facts of this case.
As to the balance of the majority opinion, I continue to concur in conclusion only.
NOTES
[1] Parenthetically, we would note that the legislature has now extended implied warranties to lease transactions in sections 680.212 and 680.213, Florida Statutes (1991), undoubtedly in recognition of the substantial commercial impact that lease transactions have in our economy. This statutory enactment does not negate the earlier existence of common law warranties as provided in case law.
[2] In its ruling the trial court also thought that the doctrine of strict liability applied only to inherently dangerous products, i.e., dangerous instrumentalities. The appellees do not argue that point. The doctrine of strict liability applies not only to inherently dangerous products but to any product which when defective is dangerous and causes injuries. Zyferman v. Taylor, 444 So.2d 1088 (Fla. 4th DCA 1984).
[1] The majority opinion concludes that the word "seller" also encompasses a "lessor," the latter word describing the Diplomat Hotel in this case. See W.E. Johnson Equipment Co., Inc. v. United Airlines, Inc., 238 So.2d 98 (Fla. 1970).