FARMER, Judge.
When the defendant was arrested and charged in this case, his mother posted a $3,000 cash bail bond. Later he entered into a agreement with the state to plead guilty to one count of a scheme to defraud and two counts of grand theft. As a special condition of probation, he agreed to pay restitution in installments. At the plea hearing, however, the trial judge noticed that a cash bond had been posted and decided without request by the state or anyone else to require that defendant make immediate payment of restitution from the cash bond. No one bothered to tell the mother or give her any kind of notice that her bond money was to be forfeited to the state to make the immediate payment. We conclude that a reversal of this forfeiture is compelled by law.
Little more than one month after defendant was sentenced, Louise Minasian wrote the trial judge, saying:
“Dear Judge Rodgers:
“My name is Louise P. Minasian. * * * I did post a Cash Bond for bail for my son. A copy of the Cash Bond, in the sum of $3,000.00, is attached hereto. At the time, it was posted and explained to me, that this money was to guaranty his appearance and the money was to be returned to me upon his appearance.
*1144 “ * * * [Y]ou did, without my consent, on March 4, 1994, order $2,000.00 of my bail money sent to the victims as payment of restitution. That isn’t the reason why I posted the money and I am informed that was not within your power.
“I do not have the money to higher [sic] an attorney to fight you, as I only live on a $555.00 per month pension, and this is all of my money.
“I am appealing to your sense of fairness, to amend your Order, as you have made a mistake, and return my $2,000.00.
“I enclose herein a copy of the $3,000.00 check I deposited with the Court; a copy of the receipt for the check; and a copy of your Order, wherein you Ordered that $1,945.00 be deducted from my Bond and I believe that this was beyond your bounds.”
The copy of the Bond attached to the letter recited in pertinent part the following:
“KNOW ALL MEN BY THESE PRESENTS THAT I, Louise Minasian, Depositor, * * * have deposited with the Sheriff of Palm Beach County, Florida, the sum of Three Thousand Dollars as security for the appearance of the defendant upon the conditions hereinafter set forth. If the said defendant shall appear before the Circuit or County Court * * * to answer to [the charges] and shall appear in said court from day to day and term to term shall not depart same without leave, said money so deposited shall be returned to the undersigned depositor, else to be forfeited or estreated by order of the above court.” [Italics reflect handwritten provisions]
A copy of a cashiers’s check attached to the letter showed that $3,000 had been deposited with the Sheriff of Palm Beach County by Louise Minasian.
The defendant appeals this forfeiture of Louise Minasian’s money. Although the appeal papers are nominally in his name, we take this appeal to be made by Louise Mina-sian, in spite of the fact that she was not a party to the proceedings below, for it was her property that was taken. The question directly presented is whether the defendant could consent to the State of Florida forfeiting her property without any semblance of notice to her, or any word or conduct by her authorizing the defendant to act on her behalf as regards the money.[1] We do not think he could do so under the facts of this case.
The state argues that he consented to this disposition at the plea hearing. The record discloses that early on at the hearing the judge asked whether defendant understood that one of the conditions of the probation was that restitution was “to be paid monthly in a manner to be determined by probation.” Thence the following ensued:
“COURT: How much restitution has to be paid?
“DEFENDANT: Fifteen hundred.
“PROSECUTOR: Fifteen fifty.
“COURT: Where do you work, sir?
“DEFENDANT: I’m unemployed. I’m indigent, Your Honor.
“COURT: Okay, how are you going to pay the money back?
“DEFENDANT: My mother is going to pay it back.
“COURT: You understand you could face 15 years in jail for not paying it back?
“DEFENDANT: I understand.” [e.s.]
Then the prosecutor recited the factual basis for the plea, following which the judge brought up the matter of restitution again, asking:
“COURT: What kind of bond does the defendant have? Is he on bond?
“DEFENDANT: $3,000.00 cash, Your Honor.
“COURT: We will take the money from the cash bond and there won’t be any need for monthly payments.
“DEFENDANT: Pardon me?
“COURT: We will take the money from the cash bond. If you have a $3,000.00 cash bond and you owe these victims $1,500.00—
“DEFENDANT: I understand.
*1145 “COURT: And $295.00 court costs, we’ll just take all of it.
“DEFENDANT: The $1,550.00?
“COURT: The $1,550.00 plus the court costs.
“DEFENDANT: I can’t work off the court costs?
“COURT: No sir. You can work off the cost of supervision because you’re unemployed and that’s while you’re unemployed. We might as well take care of the rest.”
At that point, the court found the plea voluntary and proceeded to impose sentence. The state contends that the above colloquy represents either the defendant’s consent to the forfeiture of Louise Minasian’s cash bond, or his waiver of the issue. We cannot agree.
In the first place, whether he consented or waived the issue is entirely irrelevant. As the cash bond was not given by him but instead by Louise Minasian, the real issue is whether she consented or waived the issue. She was, after all, not a party to the criminal proceedings. Nor is there any suggestion that she was given any prior notice of the possible forfeiture of her property. The state does not suggest how or when she was supposed to make her objection and lack of consent known, if she was not a party and was not given any prior notice.
Bail bonds are controlled by an extensive body of statutory law. See Ch. 903, Fla.Stat. (1993). Section 903.05 authorizes residents of this state to act as sureties for bail bonds, even though they are not licensed pursuant to chapter 648. Sections 903.16 and 903.17 authorize a surety other than the defendant to deposit a cash bond, along with an undertaking by the depositor. Under the circumstances of this case, where the depositor of a cash bond was not the defendant, the depositor becomes a surety. Louise Minasian gave a specific undertaking, quoted above, and that undertaking contains no agreement by her that her cash bond could be forfeited to pay restitution. Section 903.31 requires that a bond be cancelled within 10 business days after all conditions have been fulfilled. Here defendant appeared at all times required, no other breach of any bond condition has been suggested by anyone, and a final judgment of conviction was entered.
The forfeiture of cash bail bonds deposited by a surety or someone other than the defendant under sections 903.16 and 903.17 is governed by section 903.26.[2] Subsection (l)(b) of section 903.26 clearly specifies that the clerk must give the surety at least 72 hours prior notice.[3] Subsection (2) plainly conditions forfeitures on a breach of the undertaking or bond, or a failure by the defendant to appear when required. Subsection (3) expressly provides that the actual forfeiture may not take place until 35 days after the required notice. None of these provisions was followed here. No breach of any undertaking or condition occurred; the defendant appeared when required to do so; and in any event no notice of any kind was ever given to this depositor. Hence neither the statutes nor this specific undertaking authorized a forfeiture under the facts of this ease.
The state also argues that, because the restitution payments have already been made to the victims, we are unable to provide any “actual relief.” We do not understand this argument. The mere fact that an authority forfeiting property illegally from an innocent person has already disposed of the property to someone else has never been seen as a reason to forego reversing the illegal forfeiture. Were it so, government agencies would have absolutely no incentive to follow the law governing forfeitures, because they could avoid the consequences of illegally taking a citizen’s property by the mere device of quickly disposing of it to third parties outside of government.
*1146 Finally, the state argues that the fact that this forfeiture was invalid does not make defendant’s sentence illegal. While we agree with that proposition, we are unable to deduce how that would validate the forfeiture.
In the end, we think it is clear beyond any quibble that the judge had absolutely no authority to take away this cash bond, no matter how well-intentioned is the purpose of restitution. Surely no one would contend that the state could illegally take the property of an innocent citizen and give it to another merely because it is good public policy to restore to the victims of crime that which was stolen from them.
We see no alternative to reversing the forfeiture and directing the judge on remand to require the state to pay this depositor her money. We also direct the judge to amend the sentence to specify that defendant should reimburse the state in installments, as he originally agreed.
REVERSED AND REMANDED WITH DIRECTIONS.
SHAHOOD, J., concurs.
GLICKSTEIN, J., dissents with opinion.

. It is fundamental that the authority of an agent to act on behalf of a principal may not be established by statements and conduct of the agent outside the presence of the principal. Martin v. Johnson, 54 Fla. 487, 44 So. 949 (1907); Amoroso v. Samuel Friedland Family Enter., 604 So.2d 827 (Fla. 4th DCA 1992), decision approved, 630 So.2d 1067 (Fla. 1994).

. A defendant may himself deposit a cash bond and, when he does so, section 903.105(5) allows the court to deduct any fine or court costs from the defendant's cash bond. That section does not, however, authorize the forfeiture of a bond to pay restitution and, in any event, is inapplicable to the present case where the cash bond was not deposited by the defendant himself but instead by another person.

. Our cases strictly enforce the notice requirement. See Southland Ins. Co., Surety v. State, 497 So.2d 1331 (Fla. 4th DCA 1986); Accredited Surety & Casualty Co. Inc. v. Hagman, 467 So.2d 1065 (Fla. 4th DCA 1985); and Estate of Maltie v. State, 404 So.2d 384 (Fla. 4th DCA 1981).