348 So.2d 363 (1977)
Beverly SAPP, Appellant,
v.
CITY OF TALLAHASSEE, Holiday Inns, Inc., a Foreign Corporation, Adam H. Jones, Richard F. Jones, Kendrick A. Jones and Kathleen M. Jones, As Licensees, Appellees.
No. DD-251.
District Court of Appeal of Florida, First District.
July 15, 1977.
Rehearing Denied August 18, 1977.
*364 John C. Cooper and W. Dexter Douglass, Douglass & Powell, Tallahassee, for appellant.
Anne C. Booth and Edgar Booth, Hall & Booth, Julius Parker, Jr., Madigan, Parker, Gatlin, Truett & Swedmark, Bryan Henry, Tallahassee, for appellees.
ERVIN, Judge.
Appellant, Beverly Sapp, appeals the dismissal of two defendants, Holiday Inns, Inc. and the City of Tallahassee, from her personal injury suit. We affirm in part and reverse in part.

THE ALLEGED FACTS
Ms. Sapp's second amended complaint alleges Tallahassee Police Department officers, on the evening of September 4, 1974, were on special assignment at the Tallahassee round Holiday Inn. One of the officers observed two males in the rear parking area and radioed a suspicious persons report to another officer on stake-out within the hotel. The officers observed the men loiter at opposite ends of the sidewalk near the rear entrance of the hotel for about ten minutes. Ms. Sapp, a temporary employee of the Inn, was then observed leaving the rear entrance, and looking for her ride before reentering the hotel. The officer on stake-out saw the two males follow her into the hotel about a minute later. Other than reporting in, the officer took no action. Twenty minutes later he saw the males running from the hotel after severely beating and robbing Ms. Sapp inside the hotel near the rear entrance.
The second amended complaint alleges the officers owed appellant a special duty to protect her from physical assaults and were negligent in failing to properly investigate the behavior of the men. In count two, appellees Adam, Richard, Kendrick and Kathleen Jones were alleged to be franchisees or licensees of the hotel and jointly and severally liable with appellee Holiday Inns, Inc., the national organization and franchisor, for the negligence of the hotel's management in failing to provide adequate security in the rear parking areas. The trial court dismissed both the City of Tallahassee and Holiday Inns, Inc. since no showing of a duty to Ms. Sapp was made.

THE CITY'S LIABILITY
It is clear before a municipality may be held liable for the negligence of its employees, there must be shown the existence *365 of a special duty, something more than the duty owed to the public generally. Florida First National Bank v. City of Jacksonville, 310 So.2d 19 (Fla. 1st DCA 1975); Evett v. City of Inverness, 224 So.2d 365 (Fla. 2nd DCA 1969); Gordon v. City of West Palm Beach, 321 So.2d 78 (Fla. 4th DCA 1975). Ms. Sapp contends the police undertook a special duty to those persons using the rear area of the Holiday Inn, and she properly comes within that class. Such allegations are not sufficient under Florida decisional law. This court in Florida First National Bank, supra, held the plaintiff, guardian of two minor children, stated a cause of action for the negligence of police officers in failing to investigate and report on complaints of child abuse involving the father of the minor children. We held:
"Here, the municipality, through its employees, engaged in an undertaking with reference to the Dobbert children. Other persons all of whom were in positions to have gone to the aid of the Dobbert children but for their reliance upon the municipal employees refrained from rendering aid."
In the Supreme Court's denial of certiorari, City of Jacksonville v. Florida First National Bank of Jacksonville, 339 So.2d 632 (Fla. 1976), Justice England, in a concurring opinion, expanded on this key point:
"As the district court's careful opinion shows, however, the facts in this case are so disparate from any other case which has ever considered the scope of municipal liability that the requisite factual similarity is wholly absent. Merely to mention some of the controlling facts here (as alleged in the complaint) is to highlight the differences:
(1) In this case a state statute directed procedures for the detection and prevention of child abuse. The Jacksonville police failed or refused to comply with them, with the consequence that the appropriate state agency never had the opportunity to know that the Dobbert children were in need of its services. No similar procedural default, resulting in injuries to the very persons the statute was designed to protect, occurred in the decisions cited for conflict jurisdiction.
(2) Jacksonville policemen actually contacted and superficially examined the Dobbert children on the basis of child abuse complaints. No such direct and personal contact with the persons injured was involved in the Wong,[1]Modlin,[2] and Evett[3] cases.
(3) Mrs. Dobbert was in a Jacksonville jail and prison farm, and obviously unable to protect her children from abuse. She told responsible Jacksonville officials of her concerns, but the Jacksonville bureaucracy proved ineffective to deal with the problem. As a consequence, the very injuries of which she (and also her neighbors) warned were in fact inflicted. Nothing in Wong, Modlin or Evett approaches this factual setting.
(4) The Jacksonville police and its investigators failed or refused to make written reports to their superiors, although internal procedures required that they do so. The injuries suffered were precisely those which might have been prevented had there been reports on file as to the particular individuals who suffered repetitive and cumulative injuries. Again the decisions cited for `conflict' bear no factual resemblance to this case." (Footnotes added)
There is here no showing of a violation of statutory procedures by the Tallahassee police  nor a showing of a direct and personal contact with Ms. Sapp. There is no allegation *366 in the complaint of reliance by Ms. Sapp on the City's police surveillance at the time the incident took place. This is not a situation where police authorities undertook a responsibility to particular members of the public, exposing them, without adequate protection, to risks which then materialize into actual injury. Riss v. City of New York, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968).

HOLIDAY INN'S LIABILITY
Ms. Sapp's second amended complaint alleges Holiday Inns, Inc. is jointly and severally liable with the local owners of the Tallahassee Holiday Inn for her injuries. The sole ground relied upon by Holiday Inns in its motion to dismiss was that there was no operational responsibility exercised by Holiday Inns over the motel facility. No legal relationship between Holiday Inns, Inc. and the local establishment was alleged in the amended complaint. We agree with the trial court that the complaint is legally insufficient in the absence of such allegations, but find the dismissal should be without prejudice. While Ms. Sapp had filed a complaint, a first amended complaint and finally a second amended complaint, the count alleging negligence by Holiday Inns, Inc. in the second amended complaint was for the first time dismissed by the court. No prior orders had been entered dismissing her cause of action against Holiday Inns, Inc. without prejudice. We are of course committed to the rule "that amendments to pleadings be liberally allowed in the interest of justice so that the merits of the case may be reached for adjudication whenever possible ... ." Conklin v. Smith, 191 So.2d 311, 313 (Fla. 1st DCA 1966). Cf. Fla.R.Civ.P. 1.190.
As argued in her brief, Ms. Sapp can show an agency relationship between the local motel operation and the national Holiday Inn, Inc. by properly alleging control and domination on the part of the franchisor. See Cawthon v. Phillips Petroleum Company, 124 So.2d 517 (Fla. 2nd DCA 1960); Drum v. Pure Oil Company, 184 So.2d 196 (Fla. 4th DCA 1966); McMillion v. Sinclair Refining Company, 236 So.2d 151 (Fla. 1st DCA 1970).[4]
Ms. Sapp should have an opportunity to pursue her discovery and establish what, if any, direct control Holiday Inns, Inc. exercised over the operations of the hotel, particularly in security matters. This of course should not be construed as a comment by this court on the merit of Ms. Sapp's claim.
Holiday Inns, Inc. argues its franchise agreement with the local owners precludes as a matter of law the finding of an agency relationship. That agreement provides in part:
"(h) That Licensee, in the use of the name `Holiday Inn', the service marks, trade marks, color scheme and pattern, signs and the System and in Licensee's own advertising, shall identify Licensee as being the owner and operator of Licensee's particular `Holiday Inn' or `Holiday Inns' under license from Licensor; that the parties hereto are completely separate entities, are not partners, joint adventurers, or agents of the other in any sense, and neither has power to obligate or bind the other; that Licensee shall not use the words `Holiday Inn', or any combination of such words, in its corporate name or partnership name, if a corporation or partnership, nor allow the use thereof by others; that Licensee will sell or provide no products or services under the said service marks or trade marks, except inn service of lodging, foods, and other accommodations and conveniences for the public, of the same nature, type quality and distinguishing characteristics as are sold or provided, or may hereafter be sold or provided at the `Holiday Inns' in and around Memphis, Tennessee." (Emphasis supplied.)
*367 Notwithstanding its assertion that it and its licensees were separate entities, other provisions of the agreement indicate varying degrees of control by Holiday Inns, Inc.; as examples, the requirement of regular inspection of the facilities by Holiday Inns' inspectors, the requirement that the licensee strictly observe the operational rules of Holiday Inns, and a provision that the existing rules of operation may be amended in the wisdom of Holiday Inns. Another provision states that Holiday Inns shall maintain supervision over licensees "to assure compliance with `Holiday Inn' standards as established in the System."
When we compare that portion of the agreement disavowing any agency relationship between the licensor and licensee with the other pertinent portions establishing control, it is obvious that the contract's terms are inconsistent and ambiguous. We have recently held, in construing an insurance contract, that where clauses are hopelessly irreconcilable and inconsistent, we would follow the rule resolving such ambiguities against the insurer, the drafter of the contract. Pomona Park Bar & Package Store v. Excelsior Ins. Co., 347 So.2d 136 (Fla. 1st DCA 1977). Opinion filed June 15, 1977.
However the agreement's provisions are not necessarily dispositive of the agency question. While agency is normally a contractual relationship created by agreement of the parties, it may also be inferred from past dealings between the parties. It may be proved by the facts and circumstances of each particular case, including the words and conduct of the parties. 3 Am.Jur.2d Agency section 18; Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173 (1927) (Whitfield concurring).
In addition, control and domination need not be actual but may be binding upon the principal if apparent. That is, if the principal has held the agent out to the public as being possessed of the requisite authority, and a third person is aware of his authority and has relied on it to his detriment, then the principal is estopped from denying the agency relationship. Mercury Cab Owners' Association v. Jones, 79 So.2d 782 (Fla. 1955); H.S.A., Inc. v. Harris-In-Hollywood, Inc., 285 So.2d 690 (Fla. 4th DCA 1973). Compare Wood v. Holiday Inns, Inc., 508 F.2d 167 (5th Cir.1975), in which it was held there was not only sufficient control by Holiday Inns, Inc. over the licensee in its license agreement to subject Holiday Inns to liability for injury which occurred to an invitee caused by the licensee's employee, but that Holiday Inns might also be liable on a theory of apparent authority. The court concluded that because the license agreement between Holiday Inns and its licensee provided that the facility should be constructed and operated so that it would readily be recognized by the public as part of the national system of Holiday Inns, a jury could reasonably conclude that the license agreement required that the motel facility be of such an appearance that travelers would believe it was owned by Holiday Inns, Inc. It further observed that when the plaintiff contracted with the Phenix City Holiday Inn for lodging, he contracted for proper treatment by the servants of the innkeeper, but there was virtually no way he could have known that the servants in the facility were servants of the licensee, not of Holiday Inns, Inc.
The same situation controls here. There is nothing in the record before us to indicate that Ms. Sapp, employed on a temporary fill-in basis at the restaurant of the Inn at the time the incident occurred, was aware the facility was operated by the licensees.
The order of dismissal is therefore affirmed as to the City of Tallahassee and reversed in part and remanded as to Holiday Inns, Inc. for further proceedings not inconsistent with this opinion.
BOYER, Acting C.J., and MILLS, J., concur.
NOTES
[1] Wong v. City of Miami, 237 So.2d 132 (Fla. 1970). Miami police were held not to owe a special duty to merchants who had requested protection during the 1968 Republican Convention, nor could police officials' deployment of forces be considered prima facie negligence.
[2] Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967). City was held not to be vicariously responsible for alleged negligence of city inspector. No special duty was owed store patron crushed by collapsing mezzanine.
[3] Evett v. City of Inverness, Fla.App., 224 So.2d 365, supra. Police officer stopped but released allegedly intoxicated driver. Officer owed no special duty to decedent struck by this driver.
[4] Holiday Inns, Inc. argues these three cases are authority for affirmance of the trial court's dismissal, since in none of these cases was control or domination found. However those cases were disposed of at the summary judgment or directed verdict level, and not upon a motion to dismiss, as here.