599 So.2d 1377 (1992)
Dorothy BAIONE, as Personal Representative for the Estate of Nickolas Baione, Deceased, Appellant,
v.
OWENS-ILLINOIS, INC., an Ohio Corporation, Appellee.
No. 90-00959.
District Court of Appeal of Florida, Second District.
May 20, 1992.
Rehearing Denied June 23, 1992.
John F. Venable, Tampa, for appellant.
Henry W. Jewett, II, and Robert A. Hannah of Hannah, Marsee, Beik & Voght, P.A., Orlando, for appellee.
PATTERSON, Judge.
This appeal concerning asbestos litigation arises from a defense verdict in favor of the appellee. The appellant argues that the trial court erred in dismissing her causes of action sounding in strict liability and in striking her claim for punitive damages. We agree and reverse.
*1378 The appellee is the manufacturer of Kaylo, a product containing asbestos. The decedent, Nickolas Baione, was a boiler tender on United States Navy ships between 1946 and 1953 and, in this capacity, was exposed to products containing asbestos. He thereafter contracted mesothelioma, an asbestos-induced form of cancer, and died.
This case began as a personal injury action instituted by Baione and his wife, Dorothy. Baione's death occurred during the course of litigation and the action was amended to one of wrongful death brought by Dorothy as the personal representative of Baione's estate. The appellant's first amended complaint sought recovery on three theories: negligence, breach of implied warranty of merchantability, and strict liability. Strict liability was pled in two counts, one asserting that the product was "deleterious, poisonous, and highly harmful" and the other additionally asserting that the product failed to carry an adequate warning of its dangerous nature. On pretrial motion of the appellee, the trial court dismissed the counts of breach of warranty and strict liability. In regard to the strict liability counts, the trial judge apparently concluded that those theories were a duplication of the negligent failure-to-warn count and were therefore improper.[1]
The doctrine of strict liability is a recognized cause of action in this state. West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976). When a set of facts will support both a theory of common law negligence and strict liability, a plaintiff is entitled to proceed on either theory or both. Ford Motor Co. v. Hill, 404 So.2d 1049 (Fla. 1981). Injury or death from exposure to a product containing asbestos clearly falls within this category of cases. See Carlson v. Armstrong World Indus., Inc., 693 F. Supp. 1073 (S.D.Fla. 1987). Thus, it was error to dismiss the counts of the first amended complaint sounding in strict liability during the pleading stage of this case.
On the issue of punitive damages, the trial court granted the appellee's motion to strike punitive damages for the reason "that the defendant, Owens-Illinois, Inc., has previously had punitive damages assessed against them in other cases." We know of no authority which would support the striking of a claim for punitive damages, as a matter of law, for this solestated reason. To the contrary, punitive damages are appropriate in asbestos litigation and the trial court's reason, if relevant at all, would be an issue of mitigation to be considered by the trier of fact. See Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242 (Fla. 1st DCA 1984), review denied, 467 So.2d 999 (Fla. 1985).
We, therefore, reverse the final judgment, reinstate counts three and four of the first amended complaint, together with the claim for punitive damages, and remand for further proceedings consistent with this opinion.
In that the appellant suffered an adverse verdict on the theory of common law negligence and has not appealed that determination, the appellant is not entitled to retrial on the negligence count of the amended complaint.
ALTENBERND, J., concurs specially with an opinion, in which HALL, J., concurs.
ALTENBERND, Judge, concurring.
Under the controlling precedent, I agree that the trial court committed error by dismissing the plaintiff's theory of strict liability and by striking the claim for punitive damages. I write separately for three reasons: 1) to question the fundamental fairness of this result; 2) to emphasize that we have reached no decision concerning the precise nature of the claim for strict liability or the potential preclusive effect of the jury's verdict on future proceedings; and 3) to question the legal justification for punitive damages concerning conduct that occurred more than twenty years ago.
First, although the parties did not rely upon existing precedent from this district, *1379 we have previously held that it is error to dismiss a strict liability claim in the context of asbestos litigation. Bennett v. National Gypsum Co., 491 So.2d 1161 (Fla. 2d DCA 1986). Strict liability has become an accepted theory in asbestos litigation and provides a remedy in some circumstances when negligence would not. See 9 American Law of Products Liability 3d § 113:24 (T. Travers ed. 1988). Accordingly, I agree that this case must be remanded to the trial court.
While constrained to follow established precedent in this area, I question the fundamental fairness of subjecting conduct outside the state of Florida during World War II and the Korean War to a Florida theory of liability first recognized in 1976. West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976). The supreme court has clearly announced the rule that strict liability applies to conduct preceding the creation of this legal theory. Linder v. Combustion Eng'g, Inc., 342 So.2d 474 (Fla. 1977). The Linder rule is arguably fair in its application to those who manufactured their products in the 1960s when Section 402A of the Restatement (Second) of Torts (1965) was being proposed and adopted. In this case, however, the defendant's acts and the plaintiff's exposure to asbestos occurred more than a decade prior to that period. Manufacturers should be required to compensate victims under standards of care that were reasonably predictable at the time their products were manufactured. No Floridian would think it fair to be tested by a new and foreign standard of conduct created decades after he or she had engaged in the challenged conduct. It is at least possible that we have misinterpreted Linder, and the supreme court never intended this extreme retroactive application of a new rule of tort law.
Second, our decision involves two distinct theories of strict liability. The plaintiff alleged a cause of action in count III for strict liability and in count IV for strict liability for failure to warn. I question whether the jury's adverse verdict on negligent failure to warn may ultimately preclude a recovery for the plaintiff on the theory of strict liability for failure to warn. The legal question is whether there is a substantive difference, or merely a rhetorical difference, between the two theories on duty to warn.
The Committee on Standard Jury Instructions in Civil Cases has not provided standard instructions on any theory of strict liability duty to warn "pending further developments of Florida law." Fla. Std. Jury Instr. (Civ.), IV at product liability, comment 2. In a number of jurisdictions, negligent duty to warn and strict liability duty to warn are virtually the same legal theory because they both depend upon a determination of reasonableness. 3 American Law of Products Liability 3d § 32:53 (T. Travers ed. 1987). In at least one asbestos case under Texas law, the appellate court declined to reverse, but determined that a verdict in favor of the plaintiff on strict liability duty to warn was inconsistent with a verdict adverse to the plaintiff on a similar negligence theory. Borel v. Fibreboard Paper Prods. Corp., 493 F.2d 1076, 1095 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). On the other hand, other courts have attempted to draw a distinction between the two theories. Beshada v. Johns-Manville Prods. Corp., 90 N.J. 191, 447 A.2d 539 (1982); Anderson v. Owens-Corning Fiberglas Corp., 53 Cal.3d 987, 281 Cal. Rptr. 528, 810 P.2d 549 (1991). See also Annotation, Strict Products Liability  Failure to Warn, 33 A.L.R. 4th 368 (1984); 9 American Law of Products Liability 3d § 113:25 (T. Travers ed. 1988).
I am not inclined to believe that strict liability should require warnings that a reasonable person would not provide, but it is possible that the burden of proof and the burden of persuasion are different in strict liability. For example, if the plaintiff proves that a manufactured product presents a significant risk of bodily injury, it is possible that strict liability shifts the burden to the defendant to prove that a reasonable person would not provide a warning in conjunction with the sale of the product. This, of course, was not the question presented to the last jury.
*1380 The issue of strict liability duty to warn is sufficiently complex that I agree we should not decide it without giving the parties an opportunity to plead and prove that theory in the trial court. The trial court undoubtedly would prefer to handle the issue with more guidance as to the precise test for strict liability for failure to warn and the proper jury instructions for that theory, but we are more likely to make a correct decision if the issue has been fully explored in the trial court.
Third, I reluctantly agree that we must return the issue of punitive damages to the trial court. The trial court's reason for striking the claim, prior awards of punitive damages, is not a valid reason. Just as I question the fundamental fairness of imposing a new, increased standard of care upon defendants in order to solve a societal problem created by much earlier industrial activities, I question the legal justification for "punishing" the modern stockholders and employees of American corporations for the decisions and conduct of their grandparents. Today, American business is competing in a world economy against the modern industrial economies of other nations. It makes little sense for a state to subject our nation's present industrial owners and workers to the added expense of punitive damages for decisions  even irresponsible, profitable decisions  made forty years ago by their predecessors.
Punitive damages serve a valid purpose when they punish persons for their recent, inappropriate decisions. As the period becomes longer, it becomes increasingly difficult to justify this element of damage. See Celotex Corp. v. Pickett, 490 So.2d 35 (Fla. 1986) (over strong dissent, the supreme court approved punitive damages for fifteen-year-old asbestos conduct). I am convinced that the harm to our present economy and, thus, to our society from imposing punitive damages for corporate acts committed long ago by retired or deceased employees outweighs any arguable future deterrent effect that such awards might create. If this court had the power, I would be inclined to limit the element of punitive damages to claims in which the wrongful acts occurred within twenty years of the filing of the lawsuit. Cf. § 95.031(2), Florida Statutes (1991); Puchner v. Bache Halsey Stuart, Inc., 553 So.2d 216 (Fla. 3d DCA 1989) (twelve-year statute of repose for fraud). The power to so limit this judicially created element of damages rests either with the supreme court or the legislature.
HALL, J., concurs.
NOTES
[1] The appellant does not contest the dismissal of the breach of warranty count.