648 So.2d 119 (1995)
MOBIL OIL CORPORATION, Petitioner,
v.
Jeremy BRANSFORD, Respondent.
No. 80310.
Supreme Court of Florida.
January 5, 1995.
Rehearing Denied February 17, 1995.
*120 Roger S. Kobert of Mark A. Cohen & Associates, P.A., Miami, for petitioner.
Mark R. McCollem of McCollem and D'Espies, P.A., Ft. Lauderdale, for respondent.
C. Rufus Pennington, III of Margol & Pennington, P.A., Jacksonville, amicus curiae for Academy of Florida Trial Lawyers.
Mark Hicks of Hicks, Anderson & Blum, P.A., Miami, amicus curiae for American Petroleum Institute.
S. William Fuller, Jr. and Michael W. Kehoe of Fuller, Johnson & Farrell, P.A., Tallahassee, amicus curiae for Amoco Corp.
PER CURIAM.
We have for review Bransford v. Berman, 601 So.2d 1306 (Fla. 4th DCA 1992), based on apparent conflict with the opinion in Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla. 1983). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
In 1990, Jeremy Bransford entered a Mobil Mini Mart gas station in Broward County owned by Mobil Oil Corporation but leased to Alan Berman. While on the premises, Bransford was attacked and beaten by one of Berman's employees, who allegedly had a history of assaulting customers. Bransford later sued Mobil on the theory that it had effectively established an apparent agency relationship with the leaseholder, Berman.
As grounds, Bransford noted the facts that Mobil owned the property, that Mobil products were sold in the station, that Mobil trademarks and logos were used throughout the premises, and that the franchise agreement with Mobil required the use of Mobil symbols and the selling of Mobil products. Moreover, Mobil allegedly sent its representatives to the station to provide various routine franchise support services. The trial court ordered summary judgment in favor of Mobil, but the district court reversed the relevant portions of that order.
We find Bransford's allegations legally insufficient to plead a case against Mobil. In today's world, it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions. Nor does the provision of routine contractual support services refute this conclusion. Here, the contract itself expressly stated that Berman "is an independent businessman, and nothing in this contract shall be deemed as creating any right in [Mobil] to exercise any control over, or to direct in any respect, the conduct or management of [the] business."
Franchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities. However, nothing in the present record sufficiently establishes that the parties to the instant contract ceased to honor the contract's own terms, actually or *121 apparently. There thus is no remaining issue of material fact to support the district court's decision as to Mobil.
In cases of alleged apparent agency, something must have happened to communicate to the plaintiff the idea that the franchisor is exercising substantial control. Our law is well settled that an apparent agency exists only if each of three elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation. Sapp v. City of Tallahassee, 348 So.2d 363, 367 (Fla. 1st DCA), cert. denied, 354 So.2d 985 (Fla. 1977); Cawthon v. Phillips Petroleum Co., 124 So.2d 517 (Fla. 2d DCA 1960).
It is the first of these elements that is primarily relevant here. The factual allegations in the complaint below clearly fail to allege even the minimum level of a "representation" necessary to create an apparent agency relationship. The plaintiff below alleged no genuine factual representation by Mobil, but merely assumed that such a representation is implicit in the prominent use of Mobil symbols and products throughout the station and in the provision of support activities. As noted above, such an assumption is not sustainable in today's world. Unless properly amended, the complaint below clearly fails to state a cause of action against Mobil.
While the Orlando Executive Park case appears to create some distinction between "oil company cases" and others, we find any such distinction irrelevant to the holding of that case. The only relevant fact in Orlando Executive Park was that the franchisor's direct participation was substantial despite the fact it did not own the property: The franchisor actually operated several components within the complex in question. Orlando Executive Park, 433 So.2d at 494. That fact alone obviously and directly "represented" to the public that the franchisor was in substantial control of the business, even though the franchisor did not own the premises.
Indeed, actual ownership of the premises is relevant only to the extent it may indicate some degree of actual or apparent control over the business. Mobil's ownership here is irrelevant because the record indicates that Mobil had leased the property to another who possessed actual and superseding control over the premises; and there was nothing beyond trademark symbols, Mobil products, and franchise support to indicate any apparent control by Mobil as to this plaintiff.
We recognize that Orlando Executive Park suggested that oil company cases somehow are different from other franchising cases and that logos or other trademark symbols alone can create an apparent agency. Because we believe these to be erroneous impressions, we recede from Orlando Executive Park to the extent it is inconsistent with this opinion. The briefs in this case as well as the district court's opinion indicate the unnecessary confusion caused by the misleading language in Orlando Executive Park, which requires us to clarify the relevant law as set forth in this opinion above.
Finally, we address one further aspect of the district court's opinion. At one point the opinion apparently reinstates only the claim of negligent retention against Berman. Yet, the district court seems to hold that Mobil still might have some vicarious liability as to the claim of failure to provide adequate security  even though the dismissal of the same claim against Berman apparently is left intact. The opinion below and the record are not entirely clear on this point and, in any event, we need not determine what the court actually held. We merely note for the instruction of the courts below that the dismissal of any claim against an apparent agent also requires dismissal of the same claim against the apparent principal. This is based on the simple fact that apparent agency is a theory of vicarious liability imputing the acts of the agent to the principal. Thus, if the agent cannot be held liable, neither can the principal, because there is nothing to impute.
This proceeding is remanded for proceedings consistent with our views here, and with instructions that the trial court's order of summary judgment in favor of Mobil be reinstated. *122 The decision of the district court is quashed.
It is so ordered.
GRIMES, C.J., OVERTON, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
SHAW, J., dissents with an opinion.
SHAW, Justice, dissenting.
I would uphold the district court's ruling that the trial court erred in granting Mobil's motion for summary judgment.

I. FACTS
The record shows that Jeremy Bransford, an eighteen-year-old former student at the Art Institute in Fort Lauderdale, entered a Mobil Mini Mart with a friend, bought two sub sandwiches, and then exchanged sharp words with the attendant, Hyman Stetham. As Bransford was walking out the door, Stetham yelled heatedly at him, and the two approached one another. Without further warning, Stetham punched Bransford three times in the face, reached behind his own back as if to draw a gun, and threatened, "I'll shoot you if I have to." Bransford testified that when Stetham struck him in the face he did so with a folded-up knife in his hand, which functioned as a pair of brass knuckles.
Bransford was treated at a local hospital for extensive facial injuries. His facial bones were crushed in three places and he now has metal plates and screws permanently implanted in his face. One bone remains cracked. Bransford experiences pain whenever he chews and has blurred vision. The assault was recorded on videotape; Stetham pled nolo contendere to criminal charges and was sentenced to one year probation.

II. THE COMPLAINT
Count 1 of Bransford's amended complaint alleged: (1) that Mobil represented that the Mini Mart was the agent of Mobil Oil Corporation, and (2) that as a result of this representation Bransford entered the station believing that it would be operated at a level commensurate with that expected of Mobil Oil Corporation.
7. This is a claim for negligence against Defendant, MOBIL, for negligently failing to provide adequate security at the premises... .
8. On or about the date of the incident in question, Plaintiff claims that the Defendant, MOBIL, created an agency relationship between itself and the Defendant, STETHEM and or BERMAN, which was in existence on the date of this incident. This agency relationship existed by virtue of the following:
a) There was a representation made by MOBIL that the station in question was owned and/or controlled by MOBIL and/or that the station was the agent of MOBIL ... .
... .
9. The Plaintiff relied upon these representations made by MOBIL, to his detriment, and entered the property believing that it was a MOBIL station and that the property would be operated at a level commensurate with that expected of the MOBIL OIL CORPORATION.

10. By virtue of the agency relationship as aforesaid, MOBIL is vicariously responsible for the negligence of BERMAN and/or STETHEM.
(Emphasis added.)
Record evidence at the summary judgment hearing supports Bransford's first claim, i.e., that Mobil represented "the station was the agent of Mobil." Mobil owned the station and prominently displayed its logo, insignia, and color scheme in order to induce customers to patronize the station. Mobil gas and other products were sold there. Employees were required to wear Mobil uniforms and Stetham was wearing a Mobil hat when he assaulted Bransford. Alan Berman, the operator of the station, testified that Mobil representatives monitored the station routinely and at times were on the premises to "discuss [its] business operation":
Q. Has a Mobil representative ever come down to your station and given you advice on how to run the station or how to operate it in the seven years that you've been at that location?

*123 A. They do come down and discuss [my] business operation.
Mobil representatives checked on the station's pricing, appearance, and advertising.
Further evidence supports Bransford's second allegation, i.e., that as a result of Mobil's representations he entered the station believing "the property would be operated at a level commensurate with that expected of the Mobil Oil Corporation." In fact, the contractual agreements entered into between Berman and Mobil show that Mobil expressly intended to create this impression among customers. The agreements recognized that customers would be drawn to the Mini Mart by the Mobil signs and insignia. The agreements further stated that Berman was required by Mobil to provide "fair, courteous, and efficient service to [the] customers," and to "provid[e] continued training, guidance, and supervision to employees to insure high standards of retailing and services," as set out below.

III. THE CONTRACTS
As pointed out in the majority opinion, the Retail Dealer Contract provided in relevant part:
17. Relationship of Seller and Buyer. Buyer is an independent businessman, and nothing in this contract shall be deemed as creating any right in Seller to exercise any control over, or to direct in any respect, the conduct or management of Buyer's business, subject only to Buyer's performance of the obligations imposed under this contract.
(Emphasis added.) The majority fails to include in its opinion the last portion of this quote, underlined above, which is the key provision. The "obligations imposed under this contract" included:
9. Customer Service. Buyer agrees that while using any trademark, brand name, or other identification of Seller, Buyer shall: (a) render prompt, fair, courteous, and efficient service to Buyer's customers; (b) promptly investigate all customer complaints, and make such adjustments which are reasonable and appropriate ... (d) provide qualified attendants to render good service to customers... .
(Emphasis added.)
Further, the Service Station Lease provided in relevant part:
5. Use of Premises  Business Operations. Tenant acknowledges that Landlord has made a substantial investment in developing the premises as a retail gasoline facility; that Landlord has developed service stations throughout the country which are distinguished by design, trademark, decor, and graphics; that Landlord has built valuable goodwill throughout the country and has fostered confidence in the motoring public in service stations and products bearing Landlord's trademarks; that Landlord has advertised its products extensively throughout the country; and that the continued success of Landlord, and of Tenant as well as all other Mobil dealers, is dependent upon each Mobil dealer maintaining the highest standards of service station operation and customer service... . Tenant further agrees to . .. render prompt, efficient, and courteous service to all customers, providing continued training, guidance, and supervision to employees to ensure high standards of retailing and services... .
(Emphasis added.)
These provisions guaranteeing exemplary customer service were imposed and enforceable by Mobil. The underlying issue in this case, i.e., whether Mobil had control over the quality of customer service at the station, was thus a matter of extensive contractual agreement. This directly refutes the statement in the majority opinion that "there was nothing beyond trademark symbols, Mobil products, and franchise support to indicate any apparent control by Mobil as to this plaintiff." Maj. op. at 121. According to the agreements, Mobil set the standard for employee/customer relations at the Mini Mart.
The record thus contains substantial evidence supporting Bransford's claims that he relied on Mobil's representation that the station was the agent of Mobil, and that as a result of this he reasonably believed the station would be operated at a level commensurate *124 with that expected of Mobil Oil Corporation.

IV. APPARENT AGENCY AND SUMMARY JUDGMENT
This Court has noted that the doctrine of "apparent agency" has three elements and is ordinarily a question for the jury:
As [the petitioner] concedes, the district court correctly set out the three elements needed to establish apparent agency: (1) a representation by the principal; (2) reliance on that representation by a third person; and (3) a change of position by the third person in reliance upon such representation to his detriment. The existence of an agency relationship is ordinarily a question to be determined by a jury in accordance with the evidence adduced at trial, and can be proved by facts and circumstances on a case-by-case basis.
Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491, 494 (Fla. 1993).
The matter of agency is inappropriate for jury determination only if the record shows that there is no genuine issue as to any material fact and summary judgment is required:
(c) Motion and Proceedings Thereon. The motion [for summary judgment] shall state with particularity the grounds upon which it is based... . The judgment sought shall be rendered forthwith if the pleading, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Fla.R.Civ.P. 1.510.

V. CONCLUSION
In the present case, as noted above, the record contains vast evidence creating a genuine issue of fact as to whether Mobil represented that the Mini Mart was its agent and that customers could expect a level of operation commensurate with Mobil Oil Corporation.
Accordingly, under this Court's Rules of Civil Procedure the trial court erred in granting summary judgment in favor of Mobil Oil Corporation.