James M. **PATTERSON**, as the representative of Terri V. Patterson, deceased, at al., Plaintiffs,

v.

**WESTERN AUTO SUPPLY COMPANY and McBride Auto Parts, Inc., A Dissolved Corporation, Defendants.**

**Civil Action No. 95–D–1305–N.**

United States District Court, M.D. Alabama, Northern Division.

Sept. 8, 1997.

Edward E. Strain, III, J. Edward Staples, Cathy Strain, Cornelia, GA, Ronnie G. Penton, Bogalusa, LA, for Plaintiff.

Jere F. White, Jr., J. Banks Sewell, III, Birmingham, AL, Stanley A. Martin, Opelika, AL, H.E. Nix, Jr., Steven A. Higgins, Montgomery, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the Court is Defendant Western Auto's motion for summary judgment filed February 24, 1997. Plaintiffs filed a response on July 3, 1997. Western Auto filed a reply to Plaintiffs' response on July 24, 1997. After careful review of the arguments of counsel, relevant law, and the record as a whole, the court finds that Western Auto's motion is due to be denied.

On July 28, 1997 Plaintiffs and McBride Auto Parts ("McBride") filed a joint motion for an extension of time to file McBride's motion for summary judgment which was granted on August 1, 1997. On November 20, 1995 and on December 20, 1995, McBride filed motions to dismiss which the court finds are due to be denied as moot. Plaintiff's counsel has informed the court that if Western Auto's motion for summary judgment is denied, Plaintiff will dismiss McBride from this action. If McBride is not dismissed from this action, and wishes to address issues raised in those previous motions, it may do so in subsequent pleadings. On May 3, 1996, the parties filed a joint motion for a special trial setting which the court finds is due to be denied.

Also pending before the court are two motions to transfer venue. On December 11, 1995, Western Auto filed a motion to transfer venue from the Northern Division of the Middle District of Alabama to the Southern Division of the Middle District of Alabama. On December 20, 1995, McBride filed a motion to transfer venue to the Eastern Division of the Middle District of Alabama. Plaintiffs filed a response to both motions on January 11, 1996. After careful review of the arguments of counsel, relevant law, and the record as a whole, the court finds that Western Auto's motion to transfer venue to the Southern Division is due to be denied and McBride's motion to transfer venue to the Eastern Division is due to be denied.

## JURISDICTION

The court properly exercises jurisdiction pursuant to 28 U.S.C. § 1332 (diversity). The parties do not contest personal jurisdiction. Venue is proper in this District.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party. *Anderson,* 477 U.S. at 248; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* 475 U.S. at 587; *see also Anderson,* 477 U.S. at 249.

## DISCUSSION

### I. Overview

Plaintiffs are the widower and children of Terri Patterson who died when her Ford Bronco II ("Bronco II") overturned on November 3, 1993 while traveling on Interstate Highway 10 in Holmes County, Florida. One month prior to the death of Terri Patterson, her husband, Plaintiff James Patterson, purchased four tires for the Bronco II from a Western Auto store, independently owned and operated by McBride, in Dothan, Alabama. The tires that were recommended to Mr. Patterson and eventually installed on the Bronco II were larger than the size recommended by Ford Motor Company (the manufacturer). Plaintiff contends that these oversized tires increased the propensity of the Bronco II to roll over and caused or contributed to the death of Terri Patterson. Plaintiffs originally sued Ford, Western Auto, McBride, and Curtis Miller, the owner of McBride. Ford and Curtis Miller have been dismissed from the action. Plaintiffs allege that Western Auto and McBride failed to warn Mr. Patterson of the increased risk of rollover involved in equipping the Bronco II with tires larger than those recommended by the manufacturer. Plaintiffs argue that Western Auto is liable because of an agency relationship that exists between Western Auto and McBride.

Western Auto denies that the accident which resulted in the death of Terri Patterson was caused or contributed to in any way by the tires placed on the vehicle by McBride. It claims that the accident was caused solely by Terri Patterson in the operation of her vehicle in a reckless and negligent manner. It further claims that the relationship between Western Auto and McBride was solely one of vendor and purchaser and that no agency relationship exists.

The parties stipulate and therefore the court finds that the substantive law of Florida applies in this action. Western Auto's Br. In Supp. Of Mot. For. Summ. J. at 2; Pls.' Br. In Opp'n To Western Auto's Mot. For Summ. J. at 2 n. 1.

### II. Western Auto's Motion For Summary Judgment

In its motion for summary judgment, Western Auto limits its arguments to the issues of agency and the Plaintiffs' claim that Western Auto had a duty to warn Mr. Patterson. Western Auto's Br. In Supp. Of Mot. For. Summ. J. at 6. Western Auto asserts that McBride was an independent contractor and that Western Auto cannot be held liable for any alleged wrongdoings on the part of McBride or its employees. *Id.* Additionally, Western Auto contends that it had no duty to warn Mr. Patterson of the alleged dangers related to the tires installed on the Bronco II, essentially because of a lack of privity between Western Auto and Mr. Patterson. *Id.* at 7, 14.

## A. Agency

■ Under Florida law the issue of agency is generally a question of fact to be determined by a jury. *Orlando Executive Park, Inc. v. Robbins,* 433 So.2d 491 (Fla. 1983); *Robbins v. Hess,* 659 So.2d 424 (Fla. Dist.Ct.App.1995); *Holiday Inns, Inc. v. Shelburne,* 576 So.2d 322 (Fla.Dist.Ct.App. 1991). Further, the descriptive labels utilized by the parties to define their relationship do not control the nature and extent of that relationship. *Mobil Oil Corp. v. Bransford,* 648 So.2d 119 (Fla.1995) (stating that an agency relationship may be created by contract, action or representation); *Parker v. Domino's Pizza, Inc.,* 629 So.2d 1026 (Fla. Dist.Ct.App.1993). Therefore, regardless of the facts that the agreement between Western Auto and McBride is characterized as an "Associate Store Contract," that paragraph "E." of the contract disclaims McBride's status as an agent for Western Auto,[1] and that Western Auto characterizes the contract as creating a "vendor/purchaser" arrangement, those terms and provisions are not dispositive on the question of agency. Although Western Auto attempts to define their relationship with McBride as not one of agency, other terms and provisions provide for substantial involvement by Western Auto in the operation of the store run by McBride. When the contract as a whole contains conflicting or ambiguous clauses, they are to be construed against the drafter. *Sapp v. City of Tallahassee,* 348 So.2d 363, 367 (Fla.Dist. Ct.App.1977).

■ In making the determination of whether an agency relationship exists between Western Auto and McBride, the parties agree that the most significant factual question is whether Western Auto had the right to control the day-to-day operations of McBride's business. *See* Pls.' Br. In Opp'n To Western Auto's Mot. For Summ. J. at 3; Western Auto's Br. In Supp. Of Mot. For Summ. J. at 9; Western Auto's Resp. To Pls' Submission In Opp'n To Def.'s Mot. For Summ. J. at 2–3. It is the *right* to control that is crucial, not the actual control exercised. *Parker,* 629 So.2d at 1027.

■ After a careful review of the record in a light most favorable to Plaintiffs, the court finds the issue of whether McBride was an agent of Western Auto as opposed to an independent contractor is one best left to the determination of a jury. After reviewing all of the facts and exhibits offered by the parties, the court finds that a reasonable jury could conclude that an agency relationship existed between Western Auto and McBride.

Both parties cite Florida District Court of Appeals cases where agency relationships have and have not been found and attempt to analogize the facts of those cases to the facts of this case. In *Mobil Oil Corp. v. Bransford,* 648 So.2d 119, however, a case mentioned by neither party, the Supreme Court of Florida articulated the proper analysis for determining whether an agency relationship exists between a franchisor and franchisee.[2] There, the plaintiff entered a Mobil Mini Mart gas station owned by Mobil Oil Corporation but leased to Alan Berman. *Id.* at 120. While on the premises, Bransford was attacked by one of Berman's employees. Bransford sued Mobil on an agency theory noting that Mobil owned the property, Mobil trademarks and logos were used throughout the premises, Mobil products were sold in the station, and that the franchise agreement with Mobil required the use of Mobil symbols and the selling of Mobil products. *Id.* In addition, Mobil sent its representatives to the station to provide various routine franchise support services. *Id.*

The Supreme Court of Florida stated:

We find Bransford's allegations legally insufficient to plead a case against Mobil. In today's world, it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment

---

1. Western Auto's Br. In Supp. Of Mot. For Summ. J., Exhibit D.

2. The court notes that even though *Mobil Oil* involved a franchisor and franchisee, the analysis articulated therein remains applicable. Indeed,

Western Auto cites to cases involving franchisor/franchisee relationships in support of its position. *See, e.g.,* Def.'s Resp. To Pls' Submission In Opp'n To Def.'s Mot. For Summ. J. at 2 (citing Ortega v. General Motors Corp., 392 So.2d 40 (Fla.Dist.Ct.App.1980)).

decisions. Nor does the provision of routine contractual support services refute this conclusion. Here, the contract itself expressly stated that Berman "is an independent businessman, and nothing in this contract shall be deemed as creating any right in [Mobil] to exercise any control over, or to direct in any respect, the conduct or management of [the] business."

Franchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual support activities.

*Id.* at 120.

Based on the franchise logos, related advertisements, routine franchise support and the terms of the contract, the Florida Supreme Court found no agency relationship. Similarly, Western Auto's argument, in essence, is that although McBride operated what looked to be a Western Auto store, save for a sign indicating McBride's independent operation and ownership, Western Auto lacked sufficient control over the operations of McBride to establish an agency relationship. Western Auto's Br. In Supp. Of Mot. For Summ. J at 12. It contends that McBride was responsible for the operation of its business and its only relationship with Western Auto concerned the purchase of products sold by Western Auto. *Id.* Further, Western Auto maintained no control over the daily operations of McBride and exercised no control over the supervision of McBride employees. *Id.* In addition, because McBride purchased the tires in this case from Carroll Tire Company, an outside supplier, Western Auto received no benefit from the sale of the tires other than a one percent fee for Mr. Patterson's use of a Western Auto credit card in the purchase. *Id.* at 12–13.

Contrary to Western Auto's assertions, and the facts of *Mobil Oil,* a review of the record reveals the existence of a jury question as to the extent of control exercised by Western Auto and whether that interaction between Western Auto and McBride was enough to establish an agency relationship. For example, in the "Associate Store Contract" entered into by Western Auto and McBride, the parties agreed that McBride would operate under a "Flag Store Plan," where McBride was to install in the store, at its own expense, a store layout and design plan promulgated by Western Auto. Western Auto's Br. In Supp. Of Mot. For Summ. J., Exhibit D–4. McBride was required to follow Western Auto stock plans and was required to get Western Auto's permission, in writing, to make certain stock changes. *Id.* McBride had to "adequately stock, display and aggressively promote" Western Auto brands. *Id.* McBride was required to purchase from Western Auto a "model stock bin tag program" for updating inventory and "an electronic ordering system which provides a convenient and efficient method of ordering goods from Western Auto." *Id.* at D–4, 5.

McBride was required to spend three and one-half percent of annual gross sales on advertising and was required to use advertising supplied or approved by Western Auto. *Id.* at D–6. McBride's management was required to complete up to four weeks of Western Auto training, which included "classroom training, in-store training, or both, as may be determined by Western Auto at its sole discretion." *Id.* Western Auto had the right to enter and inspect McBride's store to check "merchandise, furnishings, fixtures, operating methods, and books and records." *Id.* Further, McBride was required to keep adequate business records, and was required to furnish Western Auto with financial statements, including a balance sheet and profit-and-loss statements. *Id.* To accomplish this, McBride was required to comply with the terms of a Western Auto bookkeeping plan or was required to develop another plan acceptable to Western Auto. *Id.*

Western Auto also articulated what type of insurance McBride was required to purchase and required McBride to make provision for workers' compensation insurance, social security, unemployment insurance, and unemployment compensation disability. *Id.* at 7. Additionally, the deposition of Curtis Miller, provided by Western Auto in support of its motion for summary judgment, establishes *inter alia* that: (1) Western Auto employees would direct McBride to clean and organize the store in certain ways; (2) Western Auto

directed McBride to paint a certain color scheme on the outside of the store; and (3) Western Auto dominated McBride's inventory and pricing. These and other factors in the record establish that the relationship between Western Auto and McBride was more involved than the relationship analyzed by the Florida Supreme Court in *Mobil Oil.* Under the summary judgment standard articulated above, the question of whether the relationship establishes agency is one for the jury.

■ Summary judgment is also inappropriate under an apparent agency analysis. To find apparent agency, "something must have happened to communicate to the plaintiff the idea that the franchisor is exercising substantial control." *Mobil Oil,* 648 So.2d at 121. Three elements must be present: (1) a representation by the purported principal; (2) a reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation. *Id.* All three elements must be proven. *Holiday Inns,* 576 So.2d 322.

■ As *Mobil Oil* and other cases indicate, proof of the first element requires more than evidence that McBride used the trade dress of Western Auto. 648 So.2d at 121; *Orlando Executive Park, Inc. v. P.D.R.,* 402 So.2d 442 (Fla.Dist.Ct.App.1981). But, *Orlando Executive Park,* 402 So.2d 442, and *Sapp,* 348 So.2d 363, establish that (1) a marketing strategy to appear as a chain that sells products across the nation; (2) the use of a standard sign representing to the public that this was part of a national chain in an attempt to draw customers through name recognition; and (3) the requirement that McBride sell Western Auto products combined with some level of control by Western Auto over McBride precludes summary judgment. Efforts to have McBride's Western Auto store recognized by the public as part of its system present an issue for the jury on the question of reliance. *Holiday Inns,* 576 So.2d at 334; *Orlando Executive Park,* 402 So.2d at 451. *See also Ilgen v. Henderson*

*Properties, Inc.,* 683 So.2d 513 (Fla.Dist.Ct. App.1996).

**B. Failure To Warn**

■ Western Auto also claims that it is entitled to summary judgment regarding Plaintiffs' failure to warn claim. Western Auto's only argument in support of its motion is that there was a lack of privity between Western Auto and James Patterson, and thus Western Auto did not have a duty to warn and is entitled to judgment as a matter of law. Based on the pleadings and Plaintiffs' counsel's representation to the court, Plaintiffs are proceeding under a products liability failure to warn theory of recovery only, which would hold Western Auto strictly liable.[3]

■ It is true that strict liability "is based on the essential requirement that the responsible party is in the business of and gains profits from distributing or disposing of the 'product' in question through the stream of commerce." *Johnson v. Supro Corp.,* 498 So.2d 528, 529 (Fla.Dist.Ct.App.1986) (quoting *West v. Caterpillar Tractor Co.,* 336 So.2d 80, 86 (Fla.1976)). But "privity" is no longer required under Florida law. *West,* 336 So.2d at 85; *see also Tampa Drug Co. v. Wait,* 103 So.2d 603, 607 (Fla.1958). *West,* 336 So.2d at 86–87.

■ "The distributor of a commodity inherently burdened with potential danger has the duty to take reasonable precautions to avoid reasonably foreseeable injuries to those who might use the commodity." *Advance Chemical Co. v. Harter,* 478 So.2d 444 (Fla.Dist.Ct.App.1985) (citing *Tampa Drug Co.,* 103 So.2d at 607). "Whether a product is inherently dangerous or has dangerous propensities and whether a manufacturer or distributor has a duty to warn under the circumstances are usually questions of fact for the jury." *Advance Chemical,* 478 So.2d at 447–48 (citations omitted). To establish liability, Plaintiffs will have to show Western Auto's relationship to the product in ques-

---

**3.** "When a set of facts will support both a theory of common law negligence and strict liability, a plaintiff is entitled to proceed on either theory or both." *Baione v. Owens–Illinois, Inc.,* 599 So.2d 1377, 1378 (Fla.Dist.Ct.App.1992). Further, the

Florida Supreme Court has adopted the doctrine of strict liability as stated by the A.L.I. Restatement (Second) of Torts § 402 A. *West v. Caterpillar Tractor Company, Inc.,* 336 So.2d 80, 87 (Fla.1976).

tion, the defect or unreasonably dangerous condition of the product, and the existence of a proximate causal connection between such condition and the user's injury or damages. *West*, 336 So.2d at 86–87. As a necessary component of Plaintiffs' case, they will have to establish an agency relationship between Western Auto and McBride. Accordingly, the court finds that Western Auto's motion for summary judgment on the issue of failure to warn is due to be denied.

### III. Motion To Transfer Venue

Under 28 U.S.C. § 1404, a district court has broad discretion to transfer a civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a); *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988). In addition, plaintiff's choice of forum should be honored unless the defendant presents strong reasons for the change of venue. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The court finds that Western Auto and McBride have failed to present such reasons and accordingly their motions to transfer venue are due to be denied.

### CONCLUSION

Based on the foregoing, it is CONSIDERED and ORDERED that:

(1) Western Auto's motion for summary judgment be and the same is hereby DENIED.

(2) The joint motion for a special trial setting be and the same is hereby DENIED.

(3) McBride's motion to transfer venue to the Eastern Division of the Middle District of Alabama be and the same is hereby DENIED.

(4) Western Auto's motion to transfer venue to the Southern Division of the Middle District of Alabama be and the same is hereby DENIED.